**Lester SCHMIDT, Plaintiff–Appellant,**

**v.**

**METHODIST HOSPITAL OF INDIANA, INC., Defendant–Appellee.**

**No. 95–2773.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 5, 1996.

Decided July 9, 1996.

Lester H. Cohen (argued), Denise K. La-Rue, Haskin, Lauter & Cohen, Indianapolis, IN, for Plaintiff–Appellant.

Kenneth B. Siepman, Kim F. Ebert, Julia B. Gelinas, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Defendant–Appellee.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Lester Schmidt worked as a nurse at Methodist Hospital in Indianapolis, Indiana. Schmidt filed suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, claiming that the hospital failed to make a reasonable accommodation for his hearing disability by refusing to transfer him to a different nursing unit. The district court granted summary judgment in favor of the hospital, and we affirm.

### Background

Schmidt, who is severely hard of hearing, is a registered clinical nurse. When he applied for a nursing position at Methodist in August 1992, the hospital offered him a choice between its hemodialysis and orthopedic units. With the hopes of becoming a certified nephrology nurse, Schmidt selected the former. He accepted Methodist's offer of employment as a "Clinical Nurse, Acute Dialysis Unit–5H," and started work on September 8, 1992.

Like all new hires, Schmidt entered an initial six to eight week orientation period during which he was paired with a more experienced hemodialysis nurse. Almost immediately, however, Schmidt realized that his hearing disability was particularly problematic in the hemodialysis unit. The unit's medical equipment, which included dialysis, blood pressure, and heart monitor machines, had different alarms to signify changes in a patient's medical condition. Schmidt's impaired hearing prevented him from distinguishing the respective alarms. The alarms left Schmidt disoriented and confused, which in turn led him to fear that he would be unable to respond appropriately in case of an emergency.

But the alarms were not Schmidt's only problem in the hemodialysis unit. According to Leeann Gerholdt, Schmidt's preceptor during the orientation period, and Rebecca Nicely, the nursing manager in the unit, Schmidt had difficulty setting up the dialysis machines. Whereas trainees typically can set up a dialysis machine within their first two weeks, Schmidt still had not mastered the task after five weeks on the unit. Schmidt himself admitted that he had difficulty with the machine, and that he never felt completely comfortable with it. Moreover, Schmidt also had trouble determining the appropriate treatment for certain critical situations. On several occasions, Gerholdt noted that Schmidt did not respond quickly enough to a dialyzed patient's falling blood pressure or to other symptoms of patients in distress.

Despite initial progress reports that were satisfactory, Schmidt realized within the first six weeks that he could not continue. On October 15, he met with Nicely and Sue Biggs, a clinical instructor, to discuss his predicament. Six days later, Schmidt again met with hospital personnel who expressed their concerns with Schmidt's performance. Sandra Bradley, patient care manager for the hemodialysis unit, offered Schmidt some suggestions and said that they would meet again in a couple of weeks. The next day, however, Schmidt requested a transfer to another unit, preferably orthopedics. Methodist declined the transfer, and gave Schmidt three options. He could resume his position in the hemodialysis orientation program and receive additional training, he could resign voluntarily and reapply for a position in a different area, or he could be terminated. After Schmidt declined each of the first two options, Methodist terminated his employment effective November 4, 1992.

The sequence and timing of these events implicate several of Methodist's employment policies. First, during the initial six months

of a nurse's employment, termination is not subject to appeal through the hospital's grievance procedure. This policy is designed to give the hospital an opportunity to evaluate its hiring decisions over a preliminary time period. In other words, for the first six months, Schmidt was a provisional employee. Second, nurses in their provisional employment period typically are ineligible for transfers to other departments. Schmidt claims that Methodist's adherence to these policies constitutes a failure to reasonably accommodate his disability.

## Analysis

■ We review a district court's decision to grant summary judgment *de novo*, viewing all evidence submitted and the legitimate inferences to be drawn therefrom in the light most favorable to the non-moving party. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996). We apply this standard with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict. *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994).

Enacted in 1990, the ADA is designed to level the playing field for the more than 43,000,000 Americans who have one or more physical or mental disabilities. *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir.1995); *see also Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 541 (7th Cir.1995). The statute provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

42 U.S.C. § 12112(a). To comply, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual," unless the employer can demonstrate that the accom-

modation "would impose an undue hardship" on the operation of the employer's business. 42 U.S.C. § 12112(b)(5)(A).

Applying these statutory provisions necessarily calls into question what constitutes a "reasonable accommodation," which under the ADA includes:

job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment of modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B) (emphasis added).

■ Schmidt argues that the district court's opinion effectively eliminates the reassignment provision from the statute. This argument misreads the law. Reasonable accommodation does not require an employer to provide literally everything the disabled employee requests. *Stewart v. County of Brown*, 86 F.3d 107, 110–11 (7th Cir. 1996). Rather, reassignment is one among many alternative accommodations that an employer reasonably may offer. 29 C.F.R. § 1630.2(o)(2)(ii). *See White v. York International Corp.*, 45 F.3d 357, 362 (10th Cir. 1995). Employers cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies, but they are not required to find another job for an employee who is not qualified for the job he or she was doing. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987). *See also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986) (any reasonable accommodation by the employer is sufficient to meet its accommodation obligation under Title VII). The accommodation that Schmidt requested was a transfer to a different department. Instead, Methodist offered other reasonable accommodations to Schmidt. The hospital offered Schmidt additional training in the hemodialysis unit, but he refused. The hospital also offered Schmidt the opportunity to resign and reapply for employment in the orthopedics unit, but he declined this option as well. Schmidt's failure to accept these accommoda-

tions renders him unqualified under the ADA. *See* 29 C.F.R. § 1630.9(d). These accommodations may not have provided Schmidt everything that he wanted, but they are enough to satisfy Methodist's statutory duty.

The Sixth Circuit reached a similar conclusion in a recent case involving an employer's refusal to transfer an employee who suffered from migraine headaches. *See Hankins v. The Gap, Inc.,* 84 F.3d 797 (6th Cir.1996). In *Hankins,* the employee sought a transfer to a different unit in order to avoid a noisy environment that aggravated her migraine condition. The employer refused the transfer, but the employee did have available "paid sick leave, paid personal days, a voluntary time off program, and ample and flexible vacation time, all of which she left virtually untouched." *Id.* at 801. In affirming the district court's grant of summary judgment for the employer, the Sixth Circuit held that a claimant will not be considered a qualified individual with a disability if she rejects reasonable accommodations that are necessary for her to perform the essential functions of her position. *Hankins* at 802, *citing* 29 C.F.R. § 1630.9(d). Schmidt, like *Hankins,* presents the case of an individual not qualified under § 1630.9(d). *See also Daugherty v. City of El Paso,* 56 F.3d 695, 698 (5th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996).

■ Schmidt's final argument is that Methodist's failure to transfer him constitutes discrimination because the hospital accommodated other employees in ways that it did not accommodate him. *See Myers v. Hose,* 50 F.3d 278, 284–85 (4th Cir.1995). Schmidt points specifically to the case of Elizabeth Thompson, a nurse who entered the hemodialysis unit at the same time as Schmidt but was declared a mismatch and subsequently transferred out of the unit. Schmidt and Thompson are not, however, similarly situated: Unlike Schmidt, Thompson had prior experience at the hospital. Before transferring to hemodialysis, she had been working as a clinical nurse in another unit. When the hemodialysis assignment did not work out, Methodist returned Thompson to her original position. For Schmidt, by contrast, hemodialysis trainee *was* his original position, and without six months of expe-

rience, he was not automatically eligible for transfer. In sum, the mere fact that Methodist transferred Thompson does not prove that it discriminated against Schmidt because of his disability.

Schmidt contends that whether Methodist hired him as a "hemodialysis nurse" or as a clinical nurse in the hemodialysis unit, whether Schmidt was otherwise qualified as a hemodialysis nurse, and whether Schmidt and Elizabeth Thompson were similarly situated employees are disputed issues of fact that require a trial. No material facts are in dispute, however. The dispute is with respect to the application of these facts to the existing law.

On this record, no jury could fail to find that Methodist Hospital satisfied its statutory duty of reasonable accommodation. *See Stewart,* 86 F.3d at 112. Because he has not shown that he is otherwise qualified for the position, Schmidt has failed to establish a *prima facie* case that his employer discriminated against him on the basis of his hearing disability. *See DeLuca v. Winer Industries, Inc.,* 53 F.3d 793, 798 (7th Cir.1995).

### Conclusion

For the foregoing reasons, the district court's grant of summary judgment is

AFFIRMED.