**Monte K. SIEBERNS, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. 1:96–CV–39.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 25, 1996.

T. Russell Strunk, Warsco and Brogan, Fort Wayne, IN, Mediator.

John C. Theisen, Holly A. Brady, Gallucci Hopkins and Theisen, P.C., Fort Wayne, IN, for Monte K. Sieberns.

John T. Neighbours, Baker and Daniels, Indianapolis, IN, Maria C. Campo, Baker and Daniels, Fort Wayne, IN, for Wal–Mart Stores, Inc.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a Motion for Summary Judgment filed by the defendant, Wal–Mart Stores, Inc. ("Wal–Mart"), on October 7, 1996. The plaintiff,

Monte K. Sieberns ("Sieberns") filed a response to said motion on October 24, 1996, and Wal–Mart filed a reply on November 7, 1996.[1] For the following reasons, Wal–Mart's Motion for Summary Judgment is GRANTED.

## I. STATEMENT OF FACTS

On October 18, 1995, Monte Sieberns walked into the Huntington, Indiana, Wal–Mart store to apply for a job as a cashier/sales associate. Sieberns, who is blind, filled out an application and was subsequently interviewed by Sandra Bromfield, who was the personnel manager at the Huntington Wal–Mart. After the interview, which occurred on October 19, 1995, Bromfield told Sieberns to call her the following Monday to discuss whether or not employment with Wal–Mart would be possible. After interviewing Sieberns, Bromfield met with Lana McQuitty ("McQuitty"), Wal–Mart's store manager, to discuss the possibility of hiring Sieberns for the cashier/sales associate position. The two discussed the duties and responsibilities of the job and concluded that Sieberns would not be able to perform as a cashier/sales associate due to his disability. They then considered Sieberns for the positions of people greeter or perhaps telephone operator. Wal–Mart claims it considered him for those positions even though they were not available at the time he applied for employment. But, Bromfield and McQuitty concluded that there was no reasonable accommodation that could be made to permit Sieberns to perform the functions of any possible job. Wal–Mart contends that its decision not to hire Sieberns was made for legitimate, non-discriminatory reasons, that is, there was no job available that he could perform with or without a reasonable accommodation. Sieberns contends that he could have performed the job of telephone operator if the store had modified its phone system to accommodate his disability. Wal–Mart

claims that an AT & T company representative told McQuitty and Bromfield during a telephone conversation that the store's phone system could not be modified to accommodate Sieberns. Thus, when he called Bromfield on the designated day, Sieberns was informed that the store would not be able to hire him. As will be explained below, Sieberns later became convinced that the phone system Wal–Mart had in place at the time he applied for employment could indeed be modified so that he could operate it. Consequently, Sieberns concluded that Wal–Mart failed to accommodate his disability and, on January 26, 1996, he filed this suit alleging a violation of the Americans with Disabilities Act.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

---

1. In addition, Sieberns filed a Motion to Strike or, Alternatively, to Disregard certain evidence presented by Wal–Mart. This motion was fully briefed on November 7, 1996. Also on November 7, Wal–Mart filed two motions, one to strike the affidavit of Sieberns and another to strike the affidavits of two of Sieberns' witnesses. Sie-

berns filed responses to these motions on November 22, 1996. Since none of these motions affect the court's analysis of the Motion for Summary Judgment, this Order will be entered before the filing of Wal–Mart's reply briefs in support of its motions to strike.

L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.,* 89 F.3d 452, 455 (7th Cir.1996); *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence nor the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511; *North Am. Van Lines, Inc.,* 89 F.3d at 455. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Ill. Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

In any event, in employment discrimination matters, the standard on summary judgment is applied with "added rigor." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993); *see Wohl v. Spectrum Mfg.,* 94 F.3d 353, 355 (7th Cir.1996). As the Seventh Circuit reiterated in *Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994), citing the standard set out in *Sarsha:*

> Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict. (Citations omitted.)

## III. DISCUSSION

The ADA prohibits employment discrimination "against a qualified individual with a

disability because of the disability of such individual ...[.]" 42 U.S.C. § 12112(a). The ADA prohibits an employer from discriminating against such persons with regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. 12112(b)(5)(A). A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). The employer's duty to provide reasonable accommodations does not extend, however, to accommodations that "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

■ Wal–Mart contends that Sieberns is not a qualified individual with a disability, since there was no reasonable accommodation that could be made which would enable him to perform the essential functions of the jobs for which he was considered. The only accommodation that could be made, Wal–Mart concluded, was to have another employee assist Sieberns at all times. Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum"), p. 5. Wal–Mart claims that due to staffing and budgetary problems at the store, such an accommodation would be an undue hardship on the business. *Id.* Sieberns agrees that such an accommodation would not be reasonable, but he further contends that a modification of the store's phone system *would have been* a reasonable accommodation. Plaintiff's Response, p. 15. Wal–Mart further contends that it "considered creating a temporary telephone operator position at the courtesy desk for the sole purpose of answering the telephones, and making PA announcements for the Christmas season." Defendant's Memorandum, pp. 4–5. However, Wal–Mart claims that "[t]his effort did not come to fruition because Wal–Mart's telephone system could not be modified in order to allow Sieberns to operate it properly." *Id.,* p. 5. Wal–Mart further admitted that if the phone system could have been modified, Sieberns would have been hired. Plaintiff's Designation of Evidence, Exh. 5, Depo. of McQuitty, p. 20. Sieberns presents evidence that Wal–Mart's phone system could in fact be modified to accommodate him. (Wal–Mart challenges the admissibility of this evidence in its motions to strike, which will be addressed below.) The debate over whether or not Wal–Mart's phone system could have been modified so as to accommodate Sieberns is actually part of the larger issue of whether or not Wal–Mart violated the ADA by not making a sufficient effort to accommodate Sieberns. Sieberns complains that Wal–Mart failed to engage in an interactive process with him to determine what sort of accommodation might be possible. He claims that "[h]ad they engaged in the interactive process, Sieberns would have investigated the phone system, would have shown Wal–Mart it could easily be re-programmed with no physical modification being necessary and he would presumably have been hired." Plaintiff's Response, p. 10.

Sieberns argues that the law imposes on employers a duty to engage in an interactive process with the potential employee to determine what accommodation would be necessary and reasonable. Sieberns states that federal regulations provide that an employer should " '[c]onsult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation.' " Plaintiff's Response, p. 9 (quoting 29 C.F.R. § 1630 App. at 1630.9). As Sieberns also points out, the Seventh Circuit has acknowledged that under the ADA, an "employer has at least some responsibility in determining the necessary accommodation." *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996). Sieberns argues that Wal–Mart failed to engage in this interactive process. He claims, for example, that Bromfield and McQuitty did not discuss with him the functions of a

cashier/sales associate job, but that they concluded on their own that he could not perform the essential functions of that job. Plaintiff's Response, p. 9. However, Sieberns testified that he did not ask Bromfield what the essential functions of the sales job were during his interview, and that he formulated his own understanding of what those functions were. Defendant's Index of Evidentiary Materials, Exh. A, Depo. of Sieberns, p. 240. He also testified that he did not ask for any accommodation for the position of sales associate. *Id.* at pp. 234 and 240. Furthermore, he testified that he never asked Bromfield for any type of accommodation. *Id.*, Exh. B, Depo. of Sieberns, p. 267. In fact, Sieberns did not make any suggestions regarding possible accommodations until he was asked during his deposition. It makes no sense to hold Wal–Mart liable for failing to consider possible accommodations not suggested until months after its employment decision was made. In *Valentine v. American Home Shield Corporation,* 939 F.Supp. 1376 (N.D.Iowa 1996), the district court held that a discharged employee who suggests possible accommodations only long after the fact was barred from creating a fact issue as to the viability of those accommodations. The court stated that "[w]hatever the time frame may be for a disabled employee to 'describe' the reasonable accommodations sufficient to qualify him or her for a job, the court is confident that it is not so generous as to encompass suggestions made only in a resistance to summary judgment." *Valentine,* 939 F.Supp. at 1400–1401.

Sieberns also alleges in his brief that during the October 25, 1995 phone call with Bromfield, her "attitude towards [him] had completely changed" and he implies that this indicated that her reasons for not hiring him were disingenuous. Plaintiff's Response, p. 6. He also claims that when Bromfield mentioned to him that Wal–Mart had considered him for the phone operator position and he told her he would be interested in such a

position, she "summarily dismissed [his] interest and indicated that the telephones could not be modified." *Id.* at p. 7. However, Sieberns was asked about that phone conversation during his deposition, and he admitted that perhaps his opinion of Bromfield's attitude was clouded by his own disappointment. He further testified that he did not suggest any accommodation or modification during that conversation. The discussion included the following exchange:

Q. Did you think that Sandy Bromfield was giving you a runaround?

A. I was under that impression, yes.

Q. And why were you under that impression?

A. Well, I guess it was more disappointment at the fact that I didn't get the job.

Q. Was there anything untrue that she told you?

A. Well, no, what she said was true enough. But I felt at that time that maybe we could modify it in some way.[2]

Q. Did you ask her for modification at that time?

A. No, I didn't.

Q. So how did you expect Wal–Mart to modify since you didn't ask them for modification?

A. Well, I don't know. I can't answer that question.

Defendant's Index of Evidentiary Materials, Exh. A, Depo. of Sieberns, p. 253. Finally, as further evidence that the store failed to accommodate him, Sieberns claims that Wal–Mart also failed to consult with any outside rehabilitation agencies or disability constituent organizations as is suggested as a possible avenue in 29 C.F.R. § 1630 App. at 1630.9.

Sieberns' argument construes this interactive process requirement far too broadly. While he is correct that the Seventh Circuit recognizes this obligation, he fails to ac-

---

2. Only excerpts of Sieberns' deposition are included in the summary judgment evidence. Thus, it is unclear whether the use of the word "modification" refers to a modification of the phone system or a modification of certain job duties. It matters not, however, since the conversation illustrates that Sieberns had at least some opportunity to suggest alternative accommodations during the phone call but he did not do so. It also illustrates that he was at least thinking about or hoping for some sort of accommodation or "modification" as of October 25, 1995, and yet he never pursued the matter with Wal–Mart.

knowledge that the law does not impose on an employer a duty to exhaustively investigate every possible option or type of accommodation, or to ensure that the potential employee is intimately involved in every effort the employer makes to find an accommodation. The Seventh Circuit in *Beck* wrote that:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

*Beck,* 75 F.3d at 1135 (quoting 29 C.F.R. § 1630.2(*o*)(3) (1995)). The *Beck* case also held that to determine if the interactive process has been properly employed in any given instance, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." *Id.* Finally, *Beck* also held that the determination of whether the interactive process was utilized "must be made in light of the circumstances surrounding a given case[.]" and that a court should apply "the concepts of *good faith and reasonable effort* to the facts" of the case before it. *Id.* at 1136 (italics added).

In the present case, Sieberns' argument that Wal–Mart failed to engage in the interactive process, that is, failed to investigate properly what accommodations might be possible with respect to his disability, is unconvincing. To begin with, once the company determined that Sieberns would be unable to perform the cashier/sales associate job, it considered other possible positions. It even went so far as to consider creating the temporary telephone operator position. It is well established that an employer is under no duty to create a position in order to accommodate an individual's disability. 29 C.F.R. § 1630 App. § 1630.2(*o*); *White v. York Int'l.,* 45 F.3d 357, 362 (10th Cir.1995); *see also Schmidt v. Methodist Hospital of Indiana,* 89 F.3d 342, 344 (7th Cir.1996) (employer "cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies, but they are not required to find another job for an employee who is not qualified for the job he or she is doing[.]") (citations omitted). The fact that Bromfield and McQuitty considered Sieberns for other positions certainly is an indication that Wal–Mart was proceeding in good faith and making a reasonable effort to find a suitable accommodation. The fact that they went beyond the dictates of the statute by considering *creating* a position for Sieberns clearly indicates a good faith effort to find a reasonable accommodation. Once McQuitty and Bromfield were informed that the phone system could not be modified, they understandably thought that their efforts had failed. It is illogical to argue, to the extent Sieberns is doing so, that after receiving the opinion of the AT & T representative, Wal–Mart had a duty to seek a second opinion or to automatically question the accuracy of AT & T's representation. Sieberns argues that he was excluded from the interactive process and that if he had been more actively involved, he "would have investigated the phone system, would have shown Wal–Mart it could easily be re-programmed with no physical modification being necessary and he would presumably have been hired." Plaintiff's Response, p. 10.

 However, Wal–Mart did nothing to prevent Sieberns from doing just that after he received word on October 23, 1995 that he would not be hired because the phone system could not be modified. Nonetheless, Sieberns admits that only "[a]fter the litigation began and Sieberns learned of the type of telephone system Wal–Mart had, he called Lucent Technologies (formerly AT & T) and was told the system did not need to be modified for a blind person to operate." Plaintiff's Response, p. 11, fn. 5. Thus, from

the time that he learned he would not be hired and the reason therefor, Sieberns did nothing to initiate any further interactive process. Nothing prevented Sieberns from inquiring during the phone conversation of October 23, 1995 as to the type of phone system Wal–Mart had and then proceeding on his own to investigate whether it could be appropriately modified. He failed to do so. Under the facts of this case, liability for any lack of interactive process after Wal–Mart told Sieberns it could not hire him lies with Sieberns himself. Nowhere in the cases or the federal regulations does the law place the entire burden of seeking a reasonable accommodation upon the employer, which is what Sieberns' argument effectively does. On the contrary, the law is clear that the interactive process is supposed to be " 'a flexible, interactive process that involves both the employer and the [employee] with a disability.' " *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1286 (7th Cir. (N.D.Ind.)) (quoting 29 C.F.R. § 1630, App. and *Beck*). When seeking to find a reasonable accommodation, "[t]he employer has to meet the employee half-way, and if it appears that the employee may need an accommodation . . . the employer should do what it can to help." *Id.* Naturally, the opposite must also be true. In the present case, all the evidence suggests that Wal–Mart went more than half-way in order to try to accommodate him, and that it was Sieberns who failed to make a good faith effort to find a reasonable accommodation. Sieberns admitted that he did not make any suggestions to Wal–Mart regarding a reasonable accommodation and, as previously stated, he did nothing to investigate the propriety of modifying Wal–Mart's phone system until after he filed suit. The entire purpose of the interactive process is to find a reasonable accommodation if one exists. Even assuming the information Wal–Mart received from AT & T was erroneous, the fact remains that it was Wal–Mart who initiated all attempts to find an accommodation for Sieberns. However, "both parties bear responsibility for determining what accommodation is necessary." *Id.* (citing *Beck*, 75 F.3d at 1135).

In cases where the courts have found employers liable for failing to reasonably accommodate an employee, it is generally the result of the employer's lack of good faith in the interactive process or, in some cases, a complete lack of any attempt to accommodate the employee. In *Bultemeyer*, for example, the Seventh Circuit held that the defendant company failed to engage in the interactive process when it failed to inquire further about an employee's mental illness after receiving a letter from the employee's doctor stating that the employee wanted a position that was less stressful than the one he had. *Bultemeyer*, 100 F.3d at 1283. In *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 33 (1st Cir.1996), the First Circuit held that City Metal failed to reasonably accommodate Katz when, during what should have been an interactive process, "Katz's suggestions were rejected out of hand." These cases are in stark contrast to the facts of the present case. The facts of this case clearly indicate that Wal–Mart put forth a good faith effort to uncover a reasonable accommodation for Sieberns and, unfortunately, was unable to do so.

**The parties' motions to strike**

█ As mentioned previously, both parties filed motions to strike certain evidence presented pursuant to this motion for summary judgment. All of the motions seek to strike testimony pertaining to the issue of wether or not the phone system could have been modified. Sieberns sought to strike the portions of the deposition testimony of Bromfield and McQuitty wherein the two women testify that they had a phone conversation with an AT & T representative who told them the phone system could not be modified. Sieberns contends that such evidence is hearsay and should be stricken. Wal–Mart counters that the evidence is admissible because it is not offered to prove the truth of the matter asserted, but rather, as evidence of the state of mind of Wal–Mart employees when they made the decision not to hire Sieberns. Wal–Mart states that McQuitty's and Bromfield's testimony regarding the statement made by the AT & T representative is not being offered to prove the truth of that statement, but merely to establish that it was made during the phone conversation. Wal–Mart cites the case of *United States v. Sanchez*, 32 F.3d 1002 (7th Cir.1994) in support of its argument. In *Sanchez*, a detec-

tive was asked at the trial of a drug suspect named Chema why he arranged to make a controlled drug buy from a drug dealer known as Avila. The detective answered that Avila " 'stated that he ... received some cocaine from Chema and Chema expected some monies. And our plan was to give him some money as partial payment.' " *Sanchez*, 32 F.3d at 1005. The defense objected to the testimony on the ground that it was hearsay. However, the trial court held (and the Seventh Circuit affirmed) "that the statement was not admitted for the truth of the matter asserted—that Avila received cocaine from Chema—but to explain why [the detective] acted as he did." *Id.* The same reasoning applies in this case. In light of this court's preceding analysis, the issue of whether or not the phone system could be modified is relevant only insofar as it pertains to the threshold issue of whether or not Wal–Mart acted in good faith in attempting to accommodate Sieberns. As Wal–Mart argues, the testimony is evidence of the state of mind of the Wal–Mart decision makers at the time they decided they could not offer Sieberns a job. The testimony of McQuitty and Bromfield was considered by the court only in that context. In attempting to accommodate Sieberns, Bromfield and McQuitty inquired into the possibility of modifying the phone system, and it was their understanding following that inquiry that the system could not be modified. Sieberns does not challenge either of those points. Thus, Sieberns' motion to strike is DENIED as the testimony of McQuitty and Bromfield was not offered to prove the truth of the matter asserted in the AT & T representative's statement, but as evidence of Wal–Mart's good faith efforts to accommodate Sieberns.

Wal–Mart seeks to strike all or portions of Sieberns' affidavit and the affidavits of Neil Woods and John Overman, both of whom state in their affidavits that they are familiar with the type of phone system Wal–Mart had at the time Sieberns applied there, and that the phone system could be modified so that a blind person could operate it. Wal–Mart argues that the affidavits should be stricken for a variety of reasons. The company argues that portions of Sieberns' affidavit contain hearsay, that it contains evidence which is not relevant, and that the subject matter of

that affidavit was covered in Sieberns' deposition testimony. Wal–Mart also argues that the affidavits of Woods and Overman should be stricken since they are, according to Wal–Mart, offering expert testimony about whether or not the phone system at Wal–Mart could have been modified. Wal–Mart states that this expert testimony was not accompanied by " 'a written report prepared and signed by the witness' " as required by Fed. R.Civ.P. 26. Defendant's Memorandum in Support of Motion to Strike, p. 2 (quoting Rule 26). Since all of the affidavit testimony Wal–Mart moves the court to strike pertains directly to the issue of whether the phone system could be modified, Wal–Mart's motions to strike are rendered moot. As discussed above, the relevant issue is not whether the system could be modified, but whether Wal–Mart acted in good faith in attempting to accommodate Sieberns by *inquiring* about such a modification. For these reasons, the testimony in the challenged affidavits does not affect the court's analysis of Sieberns' claim for failure to accommodate. Thus, Wal–Mart's motions to strike are moot and are DENIED.

## CONCLUSION

For the foregoing reasons, Wal–Mart's Motion for Summary Judgment is GRANTED.