**Judith K. ZAMUDIO, Plaintiff,**

v.

**Ann PATLA, Director of the Illinois Department of Mental Health and Developmental Disabilities, and The Illinois Department of Mental Health & Developmental Disabilities, Defendants.**

**No. 95 C 3767.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 20, 1997.

Ayesha Salima Hakeem, Chicago, IL, for Plaintiff.

Andrew N. Levine, Office of the Illinois Attorney General, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff Judith Zamudio is a registered nurse employed by defendant Illinois Department of Mental Health and Developmental Disabilities ("DMHDD"). Ann Patla, Director of DMHDD, is also named as a defendant. Plaintiff works at the Kiley Center, a residential facility for developmentally disabled adults that consists of approximately 50 buildings. Plaintiff suffers from asthma and chronic obstructive lung disease. Doctors have advised her that she not work outdoors when it is below 40 degrees or above 80 degrees. Her position at Kiley requires that she walk between buildings on most days. Plaintiff brought this suit alleging that defendants discriminated against her, in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by not accommodating her disability and by rejecting her attempts to transfer to a new position. Presently pending is defendants' motion for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS-TV,* 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a

lack of any genuine issue of material fact rests on the movant. *Id.* at 473. The non-movant, however, must make a showing sufficient to establish any essential element for which she wigll bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the non-existence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *id.* at 325, 106 S.Ct. at 2553–54 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

In 1985, plaintiff was diagnosed with asthma. She was diagnosed with chronic obstructive lung disease in 1986. Plaintiff began to work at the Kiley Center in 1991. Her respiratory problems have worsened since then. In July 1993, she first provided her employer with a note from her treating physician explaining her condition. At that time, she requested an accommodation.

A meeting was held in July 1993 and the first accommodation offered was that plaintiff wear microfilter masks when traveling between buildings. It was soon discovered, however, that wearing the masks did not prevent plaintiff's respiratory problems. In September, the possibility of enzymes or a respirator were discussed, but neither of those were feasible accommodations.

Plaintiff requested that she be transferred to a job that did not require travel outside. There were no openings in such positions at that time, but defendants agreed to inform plaintiff of any future openings for "inside" jobs. Plaintiff subsequently has identified and applied for openings for some positions, but defendants contend those were all promotions, not equivalent positions, and that defendants instead hired more qualified persons for those positions. In October 1993, defendants did offer that plaintiff could take disability leave on days that the weather prevented her from working. Defendants contend this is a sufficient offer of a reasonable accommodation and that plaintiff's decision to reject this offer precludes her from demanding a different accommodation.

Defendants' first contention is that plaintiff is responsible for a breakdown in the interactive process of finding a reasonable accommodation and therefore does not have a viable claim based on failure to accommodate. Defendants identify two grounds for finding plaintiff responsible for a breakdown: (1) plaintiff's rejection of the offer of disability leave and (2) plaintiff's failure to identify a vacant and equal paying inside job.

Discrimination under the ADA is defined as including:

(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant; . . . .

42 U.S.C. § 12112(b)(5)(A)-(B).

Resolving a request for reasonable accommodation generally requires substantial communications between the employee and employer. *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285 (7th Cir.1996).

"[R]easonable accommodation" is limited by the employer's knowledge of the disability. An employee has the initial duty to inform the employer of a disability before ADA liability is triggered for failure to provide accommodations. *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1134–35 (7th Cir.1996). *After an employee's request,* both parties bear responsibility for determining what accommodation is necessary. *Bultemeyer,* 100 F.3d at 1285. Once a disability has been summoned to the fore, determining what specific actions should be taken by an employer requires an interactive process involving participation by both sides. *Beck,* 75 F.3d at 1135.

*Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago,* 104 F.3d 1004, 1012 (7th Cir.1997).

No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility. For example, the cause of the breakdown might be missing information. . . . Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process.

*Beck,* 75 F.3d at 1135–36.

Defendants' contention that plaintiff obstructed the process by not identifying appropriate inside jobs is without merit. Defendants are aware of the positions the Kiley Center has available and the physical requirements or working conditions for those positions. Presumably, defendants would be more familiar with the available positions than plaintiff would be. Also, defendants' argument to this effect is disingenuous since defendants also contend that, since 1993, there have been no openings for equivalent inside positions. Plaintiff's alleged failure to identify an appropriate inside job cannot be the basis of a breakdown for which plaintiff would be responsible.

Defendants' other identified ground for an alleged plaintiff-induced breakdown is not a question of who is responsible for a breakdown. The actual dispute is whether the offer of use of disability leave was a reason-

able accommodation. Therefore, that issue will be addressed next.

 An employee is not entitled to a particular reasonable accommodation. As long as the employer offers an accommodation that is reasonable, the employer has satisfied its obligation under § 12112(b)(5)(A). *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996); *Schmidt v. Methodist Hospital of Indiana, Inc.,* 89 F.3d 342, 344 (7th Cir.1996); *Hankins v. The Gap, Inc.,* 84 F.3d 797, 802 (6th Cir.1996); 29 C.F.R. § 1630.9(d). Even if a reassignment or other alternative would also be a reasonable accommodation and is preferred by the employee, the employer is not required to offer that accommodation as long as the accommodation offered is reasonable. *Gile, supra; Schmidt, supra.*

 It is undisputed that plaintiff is disabled and that she can perform the essential functions of her job with an accommodation. Defendant does not contest that plaintiff can make a facial showing that a reasonable accommodation is possible. The burden of production, therefore, would be on defendants to show that they cannot accommodate plaintiff. *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112 (8th Cir.1995); *Garza v. Abbott Laboratories,* 940 F.Supp. 1227, 1239 n. 15 (N.D.Ill.1996); *Miller v. Illinois Department of Corrections,* 916 F.Supp. 863, 870 (C.D.Ill.1996). Alternatively, defendants could show that providing the accommodation is an undue hardship, an issue on which defendants would bear the burden of persuasion. *Vande Zande v. Wisconsin Department of Administration,* 44 F.3d 538, 543 (7th Cir.1995); *Garza,* 940 F.Supp. at 1239. Defendants' approach on the present motion is a third alternative. Defendants contend they made a reasonable accommodation available. While the burden is on plaintiff to show the feasibility of any reasonable accommodation she contends defendants failed to provide, the burden is on defendants to show that their proposed accommodation was reasonable. *Barfield v. Bell South Telecommunications, Inc.,* 886

F.Supp. 1321, 1323 (S.D.Miss.1995). *See also EEOC v. Ilona of Hungary, Inc.,* 97 F.3d 204, 211 (7th Cir.1996) (religious accommodation under Title VII); *Nelson v. Ryan,* 860 F.Supp. 76, 81 (W.D.N.Y.1994) (Rehabilitation Act).

Plaintiff does not dispute that she was offered the opportunity to use disability leave during the times that the weather prevented her from being outdoors. In support of summary judgment, however, defendants provide no details of that offer. Defendants provide a copy of an October 21, 1993 letter from the Kiley Center's ADA coordinator (Olga Duran) to plaintiff summarizing an October 8, 1993 meeting regarding plaintiff's request for accommodation. *See* Plaintiff's Dep. Exh. K. In the letter, Duran explains that a vacancy plaintiff inquired about was not being filled and instead listed three possible positions not then vacant. Two of those positions, however, were not inside jobs. Duran further advised plaintiff that she would have to follow the ordinary application process if any of those positions came open and that it could not be promised that she would be hired for any position that came open. Duran promised to inform plaintiff of any openings in those positions and also advised plaintiff that any openings would be posted in each unit. Duran further promised that plaintiff "will most certainly be considered" for any vacancy for which she qualified. The letter also stated: "Another option or alternative that was discussed with you was going on a disability leave for the times that are most difficult for you."

A copy of the disability leave policy is not provided. No information is provided regarding whether the disability leave would be at full pay or partial pay. There is nothing in the record to indicate whether plaintiff would be allowed unlimited disability leave or instead be limited by whatever standard disability leave policy is in effect. There is no information regarding whether a minimum number of days must be taken off to qualify for disability pay.[1] No information is provid-

---

1. No record evidence is provided by either side, but plaintiff's arguments imply the usual disability policy is designed for longer term disability, not the day or a few days at a time that plaintiff would require. "[T]here is no evidence in the record that DMHDD ever did anything to accom-

ed regarding what procedures might apply to plaintiff's use or request of disability leave on particular days. Would plaintiff have full discretion to declare a disability day? Would she need her supervisor's approval? Would she need verification from a doctor?

Setting aside defendants' failure to provide specific facts in support of an issue on which defendants' bear the burden of proof, plaintiff argues that she should not be relegated to part-time work when she would be capable of performing the essential functions of her job if allowed a necessary accommodation. Plaintiff argues it goes against the spirit of the ADA to force a person onto disability instead of making it possible for her to work full-time.

 The law is clear that an employer is not obliged to create a new position in order to accommodate an employee. *Gile,* 95 F.3d at 499; *Fedro v. Reno,* 21 F.3d 1391, 1395–96 (7th Cir.1994) (Rehabilitation Act); *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1187 (6th Cir.1996); *Sieberns v. Wal–Mart Stores, Inc.,* 946 F.Supp. 664, 670 (N.D.Ind.1996). Neither is an employer obliged to offer a transfer to a position where there is no current vacancy nor any impending vacancy. *Gile,* 95 F.3d at 499; *Monette,* 90 F.3d at 1187. The applicable regulations provide:

> ... In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship. . . .

> Reassignment may not be used to limit, segregate, or otherwise discriminate against employees with disabilities by forcing reassignments to undesirable positions or to designated offices or facilities. Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time. A "reasonable amount of time" should be determined in light of the totality of the circumstances. As an example, suppose there is no vacant position available at the time that an individual with a disability requests reassignment as a reasonable accommodation. The employer, however, knows that an equivalent position for which the individual is qualified, will become vacant next week. Under these circumstances, the employer should reassign the individual to the position when it becomes available.

> An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation. An employer, however, is not required to maintain the reassigned individual with a disability at the salary of the higher graded position if it does not so maintain reassigned employees who are not disabled. It should also be noted that an employer is not required to promote an individual with a disability as an accommodation.

29 C.F.R. § 1630.2(*o*), App.

 A number of cases have held that the employer was not obliged to offer extended periods of leave, paid or unpaid, until an opening occurs or the employee's condition has improved enough to return to the same position. *See Monette,* 90 F.3d at 1187; *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir.1996); *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995); *Norris v. Allied–Sysco Food Services, Inc.,* 948 F.Supp. 1418, 1438–39 (N.D.Cal.1996) (collecting cases). While that is likely to be true in most cases, each case must be considered on its particular facts. *See Hudson,* 87 F.3d at 1169; *Norris,* 948 F.Supp. at 1439–40. *See also Eisfelder v. Michigan Department of Natural Resources,* 847 F.Supp. 78, 84 (W.D.Mich.1993) (employee's request to use annual leave for sick time was a reasonable accommodation). Also, even if not obliged to make such an offer, an employer is free to make such an offer. *See Vande Zande,* 44 F.3d at 545; *Norris,* 948 F.Supp. at 1438–39, 29 C.F.R. § 1630.2(*o*), App. ("nothing in this

---

modate Zamudio through disability leave, by, for example, streamlining procedures which required approval and documentation before a person could go on disability leave." Pl. Answer Br. at 11.

part prohibits employers or other covered entities from providing accommodations beyond those required by this part"). In appropriate factual circumstances, such an offer will satisfy the employer's obligation to provide a reasonable accommodation. *See Hankins*, 84 F.3d at 801 (availability of paid sick leave, paid personal days, a voluntary time off program, and ample and flexible vacation time reasonably accommodated a warehouse "picker" who suffered migraine headaches, especially when there was a medical center on site that provided care and a place to rest). *Compare also Schmidt*, 89 F.3d at 344–45 (offering the opportunity to resign and reapply for employment in a different unit was a reasonable accommodation; employer was not obliged to offer a direct transfer);[2] *Vande Zande*, 44 F.3d at 545 (accommodation that caused employee to use 16.5 hours of paid sick leave was reasonable).

■ In the present case, defendants appear to have gone beyond their statutory obligation in offering plaintiff a flexible use of disability leave while also permitting plaintiff to apply for inside positions that become vacant.[3] However, defendants' failure to provide specific facts precludes the grant of summary judgment on the issue. A determination of whether this accommodation was reasonable is not possible on the limited facts provided.

Plaintiff's contention that the accommodation is not reasonable because it does not permit her to continue as a full-time employee might have merit if there were a reasonable accommodation that permitted her to continue full-time work, for example, if all tasks requiring outdoor work were nonessential functions that could, without undue hardship, be reassigned to other employees while still providing full-time work for plaintiff. Plaintiff, however, does not contend that such a restructuring is possible. There having

been no vacant equivalent positions, it is likely a reasonable accommodation to allow plaintiff a flexible use of disability leave and some opportunity to trade tasks with other employees, while also leaving open the opportunity to apply for vacant inside positions that may occur in the future.[4] However, the record presented does not permit a resolution of that issue on summary judgment.

■ Regardless of whether the offered use of disability leave constituted a reasonable accommodation, defendants may not discriminate against plaintiff, because of her disability or need for accommodation, when she applies for other positions and defendants must permit reassignments or transfers in accordance with existing policies. *Schmidt*, 89 F.3d at 344; 42 U.S.C. §§ 12112(b)(4), 12112(b)(5)(B).

Plaintiff complains that two other employees returned from disability leave and were assigned to new positions. David Himpelmann was a Labor Relations Administrator II for about 15 years before being on disability leave for nine months in 1995. Upon his return he was noncompetitively assigned to perform the duties of a newly created Administrative Assistant I position. Although that was a lower graded position, Himpelmann continued to receive the same salary and his job title was not officially changed. He testified that he expected to eventually receive the new job title and the commensurate salary decrease. Himpelmann did not return to his former position because that position required a person who would be there on a regular basis and because the new assignment was a less stressful position. The new position was created despite the fact that there was another Administrative Assistant who had similar duties. When Himpelmann was on disability leave for another two or three months in 1996, no one filled his job

---

2. Schmidt was first offered the opportunity to be trained to qualify for other jobs. The Seventh Circuit appears to hold that either offer, by itself, constituted a reasonable accommodation. It may be, however, that the Seventh Circuit was holding that offering the two alternatives was a reasonable accommodation; it being unnecessary to resolve in the appeal of that case whether each offer individually satisfied the reasonable accommodation requirement.

3. Plaintiff also would have been able to continue the informal practice of occasionally trading some duties with other nurses on days she could not work outside.

4. Whether defendants acted in good faith in keeping plaintiff informed of openings may also be pertinent to a determination of whether a reasonable accommodation was made available.

in his absence. The reason for Himpelmann's disability leave is not identified. It is not established that the reason for his disability leave would qualify as a disability under the ADA.

When Mary Helen Gester returned from disability leave in 1995, she was assigned to an unposted position in timekeeping where she had not previously worked. The reason for the disability leave is not identified [5] and it is not established that Gester is disabled within the meaning of the ADA.

■ Authority is split, see McCollough v. Atlanta Beverage Co., 929 F.Supp. 1489, 1503–04 (N.D.Ga.1996) (collecting cases), but this court adopts the reasoning set forth in McCollough, 929 F.Supp. at 1504–05, in holding that the requirement of applying existing policies to disabled employees means that transfer policies applicable to all employees must be equally available to disabled employees. There is no requirement, however, that once some disabled employees are offered reassignments to newly created positions or reassignments to lower positions at the same pay, all disabled employees must be offered such an opportunity.

■ It is not established that Himpelmann and Gester are disabled within the meaning of the ADA. But even assuming they are not disabled, it cannot be reasonably inferred from the evidence presented that the Kiley Center has a general policy of permitting reassignments, with or without retained pay, for any employee who desires a reassignment, or even for any employee who can no longer perform all the duties of his or her position. Plaintiff does not point to an existing policy under which she qualified for an automatic reassignment to a newly created position or a hiring preference over other candidates that were hired for positions that she desired to obtain. Plaintiff has not shown she has any viable claim based on failure to apply any existing transfer or reassignment policy without discrimination.

■ Assuming Himpelmann and Gester are not disabled persons, an inference of discrimination could be drawn if plaintiff shows one or both of those employees were similarly situated to her, but were treated more favorably. Cf. Schmidt, 89 F.3d at 345. Plaintiff has identified a registered nurse position in the Medical Services Department as a position to which she could be transferred.[6] Defendants contend Rehab nurse is not an inside job, but plaintiff's affidavit to the contrary must be accepted as true.[7] In Fall 1993, a Rehab nurse position became vacant, but the Rehab Department was reorganized and the position eliminated. Nevertheless, on the record presented, it cannot be conclusively determined that the need for an additional Rehab nurse was any less than the need for a second administrative assistant at the time Himpelmann was assigned those duties. The Rehab nurse's position apparently was a bargaining unit position, whereas Himpelmann's personnel positions probably would not be. Defendants, however, do not contend that the applicability of any collective bargaining agreement is a basis for distinguishing the two situations, nor do defendants point to any other basis for finding Himpelmann not to be similarly situated to plaintiff. On the limited record presently before the court, an inference of discrimination can be drawn.

■ There is no contention that Gester was assigned to a newly created position. However, it is claimed that Gester was noncompetitively assigned to her new position.

5. Plaintiff's Local Rule 12(N)(3)(b) Statement does not identify the reason for the disability leave and citations contained in the one paragraph of her 12(N)(3)(b) Statement (¶ 155) concerning Gester do not identify the reason. In her brief, however, plaintiff asserts without support that Gester had a "back condition."

6. The Medical Services Department is commonly referred to as the "Rehab Department" and the position for which plaintiff expressed interest is commonly referred to as a "Rehab nurse."

7. Even if the affidavit of Barbara Cochran relied upon by defendants were accepted as true, a Rehab nurse only has to travel to other buildings if the patient is unable to come to the Rehab Department. It could reasonably be inferred that this would require less trips to other buildings than plaintiff's current position. Also, there apparently is more than one Rehab nurse; it might be possible to accommodate plaintiff by having her only treat patients who could come to the Rehab Department.

Shortly before the Rehab Department was reorganized, a Rehab nurse position was filled. Plaintiff applied for that position, but another employee was selected. Although the selection was made in September 1993, the position was announced in June 1993, before plaintiff had even informed her superiors of her need to have a disability accommodated. Gester was not similarly situated; at the time she was reassigned it was known she could not perform her other position. Plaintiff also applied for positions subsequent to September 1993, but those positions involved promotions. Again, these were not similar situations to Gester's and therefore the treatment of Gester is not evidence from which an inference of discrimination may be drawn.[8] *Cf. Schmidt,* 89 F.3d at 345.

Plaintiff also contends she was discriminated against in being rejected for two positions for which she applied: a 1994 application for Habilitation Program Coordinator[9] and a 1995 application for Nursing Supervisor for the Rehab Department. Defendants contend the application for Nursing Supervisor was rejected because a more qualified candidate was hired and the Coordinator application was rejected because it was offered to another employee on the basis of union contract rights.

■■■ Plaintiff points to no direct evidence of discrimination. Therefore the indirect method of proof applies under which plaintiff initially must present *prima facie* evidence of a discriminatory denial of promotion. However, since defendants raise no issue regarding whether plaintiff can present a *prima facie* case, that issue need not be addressed. Instead, defendants have gone directly to meeting their production burden of presenting legitimate, nondiscriminatory grounds for denying the promotions to plaintiff. The burden is on plaintiff to show by a preponderance of the evidence that the stated grounds are pretextual. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407

(1993); *Kariotis v. Navistar International Transportation Corp.,* 951 F.Supp. 144, 147–48 (N.D.Ill.1997); *Williams v. Vierk Distributing, Inc.,* 1997 WL 17795 *5 (N.D.Ill. Jan.15, 1997); *Serritella v. Midwest Dental Products Corp.,* 1996 WL 495563 *3 (N.D.Ill. Aug.28, 1996). Plaintiff must present a material factual dispute as to the proffered reason. *See Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995) (quoting *Colosi v. Electri–Flex Co.,* 965 F.2d 500, 502 (7th Cir.1992)). She can do this by showing (a) the proffered reason had no basis in fact, (b) the proffered reason did not actually motivate the decision, or (c) the proferred reason was an insufficient reason to motivate selecting another person for the position. *Collier,* 66 F.3d at 892 (quoting *Cliff v. Board of School Commissioners,* 42 F.3d 403, 412 (7th Cir.1994)); *Vierk,* 1997 WL 17795 at *5.

■■■ Defendants provide a conclusory statement in an affidavit that the Coordinator position "was awarded to Ralph Coari on the basis of contract rights under the union contract." Walls Aff. ¶ 8. Neither side explains what the contractual basis was. Still, this is sufficient to satisfy defendants' burden of production. The burden is on plaintiff to show pretext. In her Rule 12(N)(3)(a) Statement ¶ 57, plaintiff states: "Plaintiff admits that one position of Habilitation Program Coordinator was awarded to Ralph Coari, but further states that she was arguably more qualified than Coari because he had not met all his objectives as shown in his evaluation of performance, while she had." However, plaintiff does not dispute that the union contract obliged Kiley to promote Coari and she also points to no evidence of Coari's performance evaluations. Neither does she explain how defendants could have avoided their contractual obligations. No genuine factual dispute exists regarding defendants' stated nondiscriminatory grounds for selecting Coari over plaintiff. The claim for discrimination in denying plaintiff a Habilitation Program Coordinator position will be dismissed.

**8.** No opinion is expressed regarding whether evidence that DMHDD assigned Gester noncompetitively would otherwise be relevant evidence at any trial that may occur.

**9.** Plaintiff twice applied for the Habilitation Coordinator position. The second time, however, the opening was never filled. Plaintiff does not contend that the failure to fill the position was motivated by discrimination against her.

The record is inconsistent regarding the time line for filling the Nursing Supervisor position, but those differences are not material. Barbara Cochran, Director of Nursing, was responsible for selecting for that position. Plaintiff apparently applied for the Nursing Supervisor position in late 1994 or early 1995. However, in early 1995, the announcement apparently was withdrawn while it was considered whether the position would be eliminated in a reorganization. Cheryle Johnson was temporarily assigned to the position. At some point Cochran interviewed plaintiff for other positions. She was also to interview plaintiff on January 19, 1995 for the Nursing Supervisor position. It is unclear whether Cochran interviewed plaintiff at that time or on a later date. In September or November 1995, Johnson was awarded the position on a permanent basis. Defendants' stated grounds for selecting Johnson over plaintiff are that Johnson was more familiar with nursing procedures and protocol and, unlike plaintiff, she had no record of disciplinary action.

Cochran testified that, in her interviews of Johnson and plaintiff, she concluded that Johnson had better knowledge of procedures. She recalled that plaintiff showed lack of knowledge of procedures in the interview, but Cochran could not recall any specific procedure for which plaintiff showed lack of knowledge. Plaintiff provides performance evaluations showing she was consistently rated as meeting or exceeding expectations of job knowledge. Also, plaintiff works on the evening shift where her supervisor is not a nurse and therefore she must rely on her own knowledge of procedures. Additionally, plaintiff had more nursing experience than Johnson and was certified in rehabilitation.

As for the difference in disciplinary records, plaintiff does not dispute that she had a prior disciplinary action. For purposes of summary judgment, it must be assumed that, although Johnson apparently had no formal disciplinary action against her, she left her position immediately prior to her temporary assignment at least in part because her supervisor was discharging her from his department. Cochran testified that she was aware of a personality conflict between John-son and her former supervisor. Cochran further testified that she never asked the former supervisor for his version of the dispute or his opinion of Johnson's performance. A factual dispute exists as to whether Johnson's disciplinary record was superior to plaintiff's. Also, Cochran's stated failure to speak to Johnson's former supervisor raises a question as to the sincerity of Cochran's stated reliance on disciplinary records.

Plaintiff has presented a genuine factual dispute as to whether the stated grounds for selecting Johnson over plaintiff were pretextual. The claim for discriminatory denial of the Nursing Supervisor position will not be dismissed.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [18–1] is granted in part and denied in part. Plaintiff's claims are dismissed except her claims (1) for denial of a reasonable accommodation; (2) discriminatory denial of a non-competitive transfer to a newly created position; and (3) discriminatory denial of her application for a nursing supervisor position. In open court on March 26, 1997 at 9:15 a.m., the parties shall submit an original and copy of a final pretrial order in full compliance with Local Rule 5.00.