**Patricia A. PEERMAN, Individually and as Administratrix, of the Estate of Gerald Gene Peerman, Plaintiff–Appellant,**

**v.**

**GEORGIA–PACIFIC CORPORATION and Turner & Newall, PLC, a Foreign Corporation, Defendants–Appellees.**

**No. 93–3501.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1994.

Decided Sept. 8, 1994.

---

Stephen L. Williams (argued), Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, IN, Timothy E. Eble, Ness, Motley, Loadholt, Richardson & Poole, Barnwell, SC, and Michael Mixson, and Richard H. Middleton, Jr., Middleton & Mixson, Savannah, GA, for plaintiff-appellant.

Robert D. MacGill (argued) and Andrew J. Detherage, Barnes & Thornburg, Indianapolis, IN, for Georgia–Pacific Corp., defendant-appellee.

Michael A. Bergin (argued), Julia M. Blackwell, Karl M. Koons, III, and Richard A. Huser, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Turner & Newall, PLC, defendant-appellee.

Before POSNER, Chief Judge, and COFFEY and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Patricia Peerman filed this wrongful death action alleging that her husband, Gerald Peerman, died from an illness caused by exposure to airborne asbestos from products manufactured and sold by Georgia–Pacific Corporation and Turner & Newall, plc (now known as T & N plc). Federal jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332(a). The district court granted summary judgment to Georgia–Pacific and T & N. We affirm.

## BACKGROUND

Gerald Peerman was employed by Babcock & Wilcox (B & W) at its Mt. Vernon, Indiana, plant from 1963 to 1982. The plant, a facility for the manufacture of parts and sub-assemblies for large utility boilers, consisted of several buildings and covered about 99 acres. During the majority of his employment with B & W, Mr. Peerman worked in the shipping and receiving department, where he was responsible for loading and unloading products shipped to and from the plant as well as transporting products within the plant. Mr. Peerman also worked as a supervisor in the shipping and receiving department, in which capacity he traveled throughout the plant as needed. During his tenure at the Mt. Vernon plant, Mr. Peerman might have been exposed to asbestos dust.

Masses of asbestos fibers, when disturbed, tend to break down into tiny dust particles which become suspended in the air. Knowledge of the dangers of inhaling and ingesting asbestos dust dates back at least to the First Century. Barry I. Castleman, M.D., Asbestos: Medical and Legal Aspects 1 (3d ed. 1990). In recent times, it has been documented that the disabilities associated with the inhalation and ingestion of asbestos dust manifest themselves primarily in three diseases: asbestosis, pulmonary and bronchogenic carcinoma, and mesothelioma. Asbestosis, the earliest known and most common asbestos-related disease, manifests itself 10 to 40 years after exposure to significant quantities of asbestos. Inhalation of asbestos particles initiates a scarring process that destroys air sacs in healthy lung tissue; and this, in turn, results in a decrease in pulmonary function and lung volume. Gray's Attorneys' Textbook of Medicine ¶ 205C.11(1) (3d ed. 1980). Pulmonary and bronchogenic carcinoma is the uncontrolled multiplication of epithelial cells in the lungs. It does not generally manifest itself until at least 15 years after the initial exposure to asbestos. *Id.* ¶ 205C.71. Mesothelioma is a rare cancer of the membrane lining the lungs, chest cavity, and abdominal cavity. It may take 30 to 35 years for mesothelioma to manifest itself, but the disease is invariably fatal. *Id.* ¶ 205C.72.

In December 1985, three years after he left B & W, Mr. Peerman died of malignant mesothelioma. Mrs. Peerman alleges in her suit that, in the course of his duties at the Mt. Vernon plant, Mr. Peerman was exposed to asbestos dust from the defendants' asbestos-containing products and that this caused him to develop mesothelioma.* During the

---

* Although her original complaint named 29 defendants, Mrs. Peerman voluntarily dismissed her claims against all defendants except Georgia–Pacific and T & N. There is nothing in the

1960s and 1970s, Georgia–Pacific manufactured and sold a pre-mixed joint compound, "Ready Mix" joint compound, that contained asbestos. Ready Mix was a plaster-like substance that was used to seal and smooth the joints between adjoining pieces of wallboard. It was applied with a caulking gun. Sometime between 1972 and 1979, construction workers applied Ready Mix joint compound to the walls of "Building 219" of the plant. T & N's predecessor manufactured and sold a spray-on insulation for drywall construction called "AA Limpet Asbestos Fibre." During a one-week period sometime between 1970 and 1975, following a fire at the plant, construction workers sprayed Limpet on the north wall of an area of the plant known as "Five Bay."

The district court granted summary judgment on the ground that Mrs. Peerman had failed to produce evidence to support a reasonable inference that the defendants' products caused Mr. Peerman to contract mesothelioma. The court applied a test for causation under which Mrs. Peerman was required to produce evidence that Mr. Peerman had been exposed to asbestos from the defendants' asbestos-containing products. The court found that, although Mrs. Peerman had produced evidence that Georgia–Pacific's Ready Mix Joint Compound and T & N's Limpet were used at the same general work site where Mr. Peerman worked, she had not produced evidence that Mr. Peerman was exposed to asbestos from these products.

## DISCUSSION

We review the grant of summary judgment to T & N and Georgia–Pacific *de novo. See Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 499-500 (7th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We view the record and all justifiable inferences drawn from it in the light most favorable to the party against whom judgment was entered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

It is agreed in this case that Indiana law governs the issue whether the defendants' asbestos-containing products caused Mr. Peerman to develop mesothelioma. The parties disagree on what the test for causation in asbestos cases is in Indiana's courts, and it is this dispute to which the parties devote most of their efforts. Neither the Supreme Court of Indiana nor the Indiana Court of Appeals has enumerated a test for causation in asbestos cases. Georgia–Pacific and T & N urge that the test that would be adopted by the Indiana Supreme Court is the one applied by the district court in this case and set forth in *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480 (11th Cir.1985), which requires proof of exposure to the asbestos-containing product. Mrs. Peerman maintains that the Indiana Supreme Court would adopt the "job site" test that is set forth in *Lockwood v. AC & S, Inc.,* 44 Wash.App. 330, 722 P.2d 826 (1986), *aff'd,* 109 Wash.2d 235, 744 P.2d 605 (1987) (en banc), and applied in *Richoux v. Armstrong Cork Corp.,* 777 F.2d 296 (5th Cir.1985), which only requires proof that the asbestos-containing product was used at a job site at a time when the plaintiff was employed at that job site.

■ If the answer to the question whether the Indiana Supreme Court would adopt the test for causation applied by the district court, the "job site" test championed by Mrs. Peerman, or an alternative test controlled the outcome of this case, we might certify the question to the Indiana Supreme Court and stay our decision in this case to await the court's answer. Circuit Rule 52 provides for this procedure so long as the rules of the Indiana Supreme Court provide for certification to that court by a federal court of questions of state law. They do. *See* Ind. R.App.P. 15(O). Nevertheless, we see no

record to explain the reason for the dismissals; however, during oral argument, Mrs. Peerman's lawyer indicated that the other defendants were

dismissed because Mrs. Peerman had failed to establish that her husband had been exposed to asbestos from their products.

need to certify this case to the Indiana Supreme Court because, no matter what test for causation is applied, Mrs. Peerman has failed to produce evidence to support a reasonable inference that the defendants' products caused her husband's mesothelioma.

Although under the "job site" test or any similar test for causation a plaintiff need not produce evidence of actual exposure to the product that is alleged to have caused an asbestos-related disease, a plaintiff still must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product. Of course, this inference can be made only if it is shown that the defendant's product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a significant amount of asbestos dust and that the asbestos dust might have been inhaled by the plaintiff.

This case involves two products—Ready Mix joint compound and Limpet spray-on insulation—which were sold in semiliquid form. Ready Mix had the consistency of a plaster, and Limpet had the consistency of a slurry. Mrs. Peerman produced evidence that her husband might have walked through areas of the Mt. Vernon plant while these products were being applied. She failed, however, to produce the necessary evidence that application of the products by the construction workers generated significant levels of asbestos dust, and that at least some of this dust could have drifted far enough in the plant to have been inhaled by Mr. Peerman.

■ Perhaps application of the defendants' products did not generate dangerous levels of asbestos dust. This seems more likely with respect to Ready Mix joint compound, which was applied to joints between adjacent pieces of wallboard with a caulking gun, than with respect to Limpet, which was applied to walls with a spray gun. Nevertheless, even Limpet could have been applied in a manner that resulted in the generation of little or no asbestos dust. *Cf.* Note, *The Causation Problem in Asbestos Litigation: Is There an Alternative Theory of Liability?*, 15 Ind.L.Rev. 679, 692 & n. 69 (1982) (noting that method in which asbestos-containing product is used or applied plays important role in determining propensity of product to

release asbestos fibers); Irving J. Selikoff, M.D., *Insulation Industry Hygiene Research Program*, Insulation Hygiene Progress Rep., at 15–16 (Winter 1972) (dumping of dry asbestos cement into a trough prior to adding water generates more asbestos dust than adding the cement to water). Even if application of the defendants' products generated dangerous levels of asbestos dust, perhaps only those actually applying the products were endangered because the wet asbestos dust might not have drifted throughout the workplace like dry asbestos dust. The record is silent on these issues. Summary judgment is appropriate if the nonmoving party has failed to produce evidence sufficient to establish the existence of an essential element of its case on which it bears the burden of proof. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. So it is here. Since Mrs. Peerman has failed to produce evidence of the physical and aerodynamic characteristics of asbestos fibers when they are immersed in a semiliquid medium, we cannot reasonably draw the inference that the use of Ready Mix and Limpet produced asbestos dust that was inhaled by Mr. Peerman.

■ We realize that Mrs. Peerman submitted evidence to support the proposition that, when released into the air of a workplace, asbestos fibers may drift throughout the workplace and may be inhaled by many workers. This evidence consisted of the affidavit of Dr. Edwin C. Holstein, M.D.; the affidavit of William J. Nicholson; an article entitled "Household Exposure to Asbestos and Risk of Subsequent Disease"; and excerpts from an article entitled "Asbestos–Containing Materials in School Buildings: A Guidance Document." The articles do not help Mrs. Peerman since they fall short of describing the physical and aerodynamic properties of asbestos fibers when immersed in a liquid. For this same reason, the affidavits do not help Mrs. Peerman. Moreover, even if the experts had stated in their affidavits to the properties of wet asbestos fibers, their testimony would not have helped Mrs. Peerman avoid summary judgment since neither of the experts visited the Mt. Vernon plant to conduct tests in order that they might ascertain the air flow patterns in the

areas in which Mr. Peerman worked and the extent to which asbestos fibers could have been disseminated there.

The judgment of the district court is AF-FIRMED.