**Nancy J. HARRIS, on her own behalf and as the Personal Representative of the Estate of Charles Harris, Plaintiff–Appellant,**

v.

**OWENS-CORNING FIBERGLAS CORPORATION, Defendant–Appellee.**

No. 96–1140.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1996.

Decided Dec. 17, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 27, 1997.

Linda George, W. Russell Sipes (argued), Laudig, George, Rutherford & Sipes, Indianapolis, IN, for Plaintiff–Appellant.

George E. Purdy, George T. Patton, Jr. (argued), Bose, McKinney & Evans, Indianapolis, IN, for Defendant–Appellee.

Before BAUER, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

Nancy J. Harris filed this wrongful death action alleging that her husband, Charles Harris, died from lung cancer caused by exposure to airborne asbestos from products manufactured and sold by Owens–Corning Fiberglas ("OCF"). Federal jurisdiction is based on diversity of citizenship. The district court granted summary judgment to OCF after determining that Harris had produced insufficient evidence linking the company's products to Harris' death. We affirm.

## I. Background

Charles Harris was employed by the Aluminum Company of America ("ALCOA") from September 1970 through February 1988. During this period, he worked principally as a furnace operator in the company's ingot department, an area of the plant approximately one-third of a mile long and one-quarter of a mile wide. He may have been exposed to asbestos dust when steam pipes lined with asbestos containing "kaylo" heat insulation ruptured during their application and repair, causing the asbestos fibers to become airborne.[1]

OCF manufactured kaylo from 1958 to 1973. Numerous other companies also manufactured asbestos-containing pipe insulation generically referred to as kaylo (also spelled "k-low," "k-lo," or "kaylow") much like individuals often refer to generic tissue paper by the brand name "kleenex." The term refers to the "K" factor or heat conductivity. A low K value means the pipe insulation is a low conductor of heat and thus a good insulator.

In December 1990, Harris sued 44 companies, including OCF, claiming that they negligently allowed their carcinogenic asbestos products into commerce, and that those products caused her husband's death.[2] In order to streamline the litigation of these cases, the parties agreed to discovery rules binding them to witness and product identification disclosure requirements. With the assis-

tance of a magistrate judge, the parties agreed to the general order on asbestos litigation ("GOAL"), which provided for an early disposition of unmeritorious claims by forcing disclosure of product identification evidence by a specific date. Harris' GOAL deadline was June 1, 1994.

The district court granted summary judgment on the ground that Harris had failed to produce evidence to support a reasonable inference that OCF's products caused her husband's lung cancer. The evidence against OCF came principally from two men, Grant Beauchamp and Kenny Pate, neither of whom knew Harris or could "distinguish the generic kaylo manufactured by any number of companies from Defendant OCF's Kaylo." The court struck the affidavit of a third man, Paul McDaniel, because it was not executed until March 1995, more than nine months after the GOAL's June 1, 1994 discovery deadline. The district court also denied Harris' motion to file newly discovered evidence on the ground that the evidence was not newly discovered; it was overlooked or it could have been discovered earlier with due diligence.

## II. Analysis

### A. Summary Judgment

We review a grant of summary judgment *de novo*, viewing all evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *Schmidt v. Methodist Hospital of Indiana, Inc.*, 89 F.3d 342, 344 (7th Cir.1996). We will affirm the decision of the district court if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict. *Id.*

An essential element of Harris' negligence claim is proof of causation. *See Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 294 (7th Cir.1996) (affirming summary judgment in favor of defendant because causation could

---

1. Inhalation of asbestos particles initiates a scarring process that destroys air sacs in healthy lung tissue, which in turn results in a progressive destruction of normal lung structure and function. *Gray's Attorneys' Textbook of Medicine* para. 205C.00(1) (3d ed.1994).

2. OCF is the lone remaining defendant. At oral argument, Harris' attorney indicated that the cases against the other defendants either had been dismissed or settled.

not be proved). Specifically, Harris must produce "some evidence of 'but for' causation"—evidence that her husband's illness would not have occurred but for OCF's conduct. *Id.* In *Peerman v. Georgia–Pacific Corp.,* 35 F.3d 284, 287 (7th Cir.1994), a wrongful death asbestos case, we described a plaintiff's burden to withstand summary judgment in similar terms: a plaintiff "must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product." We explained that "this inference can be made only if it is shown that the defendant's product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a significant amount of asbestos dust and that the asbestos dust might have been inhaled by the plaintiff." *Id.* A plaintiff does not meet this burden simply by establishing that he inhaled asbestos dust; rather, he must produce evidence tending to show that he inhaled asbestos produced by the *defendant's* product. *Id.*

At the outset, Harris contends that we erred in *Peerman* by stating that the plaintiff must prove that the defendant's product produced a "significant" amount of asbestos dust that might have been inhaled by the plaintiff. According to Harris, asbestos exposure at *any* level is potentially hazardous. We do not have the expertise to determine if Harris is correct and we do not have to. As discussed below, at whatever level asbestos poses a risk, Harris' negligence claim survives a dispositive motion only if she can establish causation, i.e., provide some evidence that *OCF's* asbestos product caused her husband's illness.

■ Harris directs us to three pieces of evidence which purportedly satisfy her burden: Grant Beauchamp's deposition testimony and the affidavits of Kenny Pate and Paul McDaniel. Grant Beauchamp did not know Harris but worked for various independent contractors that performed pipe fitting work at ALCOA. He testified only that he knew of the presence of generic "kaylo" at ALCOA without regard to a specific manufacturer. When asked at his deposition whether OCF manufactured kaylo in the 1960's, Beauchamp stated, "I don't know.... Quite a

few companies made kaylo insulation." Beauchamp's affidavit recalls OCF kaylo at the ALCOA powerhouse, but Harris worked on the "plant" side of the facility, not the powerhouse side.

■ Kenny Pate also was a pipe fitter. His affidavit refers to asbestos dust caused by the tearing or shredding of insulation, and further identifies "OCF kaylo heat insulation" as present in the ingot department. The district court disregarded Pate's affidavit because it found the affidavit to be inconsistent with Pate's inability at his subsequent deposition "to specifically name products used in the Ingot Department with any certainty." The court cited our decision in *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67 (7th Cir.1995), one of many cases wherein we have criticized "efforts to patch up a party's deposition with [a] subsequent affidavit." The *Russell* analogy is imperfect, however, because Pate's affidavit actually was executed *prior to* his contradictory deposition testimony. But instead of filling in the blanks, Pate left out of his deposition specific references to OCF kaylo. "Inherently depositions carry an increased level of reliability. Depositions are adversarial in nature and provide the opportunity for direct and cross-examination." *Darnell v. Target Stores,* 16 F.3d 174, 176 (7th Cir.1994). Moreover, "[a]lmost all affidavits submitted in litigation are drafted by the lawyers rather than by the affiants." *Russell,* 51 F.3d at 67.

Although Pate's affidavit was questionable in light of his deposition, we need not determine if the district court was correct in discounting it. Even if we were to consider Pate's affidavit, we would not find that Harris has met her burden of producing "evidence sufficient to support an inference that [her husband] inhaled asbestos dust from the defendant's product." *Peerman,* 35 F.3d at 287. Pate's affidavit places OCF kaylo heat insulation in the ingot department where Harris worked. But that department is one-third of a mile long. Pate lists a number of products and companies that supplied asbestos-related products, including OCF kaylo heat insulation for water pipes. However, the affidavit does not state that Harris was anywhere near those pipes. Simply put,

Pate's affidavit does not support an inference that Harris inhaled dust emitted from torn OCF kaylo insulation, as opposed to any other manufacturer's asbestos product (of which there were many) present in Harris' department. Harris had to link OCF kaylo to her husband's illness, something she cannot accomplish by merely asserting that her husband worked in the vicinity of this asbestos product and may have breathed asbestos dust from any one of a number of products.

■ Harris' third piece of evidence is an affidavit from Paul McDaniel, a brick mason at ALCOA. Like Pate's affidavit, it places OCF kaylo within the ingot department, which McDaniel himself describes as "huge." If OCF kaylo were the only product in the department capable of producing asbestos dust, then a fact-finder might reasonably infer that it caused Harris' illness. However, like Pate's affidavit, McDaniel's lists numerous other asbestos products in Harris' department, some of which caused extensive dust. Based on McDaniel's description, it would be unreasonable to conclude that OCF's kaylo was responsible for the asbestos dust.

■ Harris bore the burden of pointing to evidence linking the defendant's product with her husband's illness. *Buckner,* 75 F.3d at 293. She actually proved it is no more likely and perhaps less likely that OCF's kaylo product caused her husband's illness as opposed to any of the many other asbestos products in the ingot department. When, at best, the possibilities are evenly balanced, the court should enter judgment for the defendant on the ground that causation cannot be proved. *See Porter v. Whitehall Laboratories, Inc.,* 791 F.Supp. 1335, 1346 (S.D.Ind. 1992) (granting summary judgment because "if the possibility of causal connection is equivocal, the [plaintiff] has failed to meet the burden posed by the preponderance standard and an adverse summary judgment must be rendered as a matter of law"), *aff'd,* 9 F.3d 607 (7th Cir.1993); *Palace Bar, Inc. v. Fearnot,* 269 Ind. 405, 381 N.E.2d 858, 865 (1978) (reversing jury verdict for plaintiff in wrongful death action because "an inference must be drawn from a fact. Under these circumstances, to allow the jury to deliberate on the issue of cause of death was to allow them to speculate as to possibilities and nothing more."); W. Prosser & W. Keeton, *The Law of Torts* 269 (5th ed.1984) ("[a] mere possibility of ... causation is not enough"). Thus, we find that the district court correctly granted summary judgment to OCF.

### B. Due Process

■ Harris contends that the district court denied her due process of law by refusing to consider Paul McDaniel's second affidavit, executed nine months after the GOAL's June 1, 1994 discovery deadline. The district court determined that considering the affidavit would contradict GOAL's deadlines and deprive OCF of the opportunity to examine McDaniel's memory of specific products at a deposition. We agree with the district court that the GOAL, to which both parties agreed, governed discovery in this case. Complex cases such as this one must have enforceable deadlines, and enforcing the deadline against an affidavit executed nine months after discovery closed is appropriate and sensible. *See United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994) ("Ignoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations."). It was not an abuse of discretion for the district court to disregard McDaniel's second affidavit, and we will not consider it on appeal.

### C. New Evidence

Harris also appeals the denial of her two Fed.R.Civ.P. 60 motions in which she claimed that new evidence required relief from the judgment. Harris' "new evidence" consisted of: (1) an affidavit from journeyman asbestos contractor Mickey Walker positively identifying OCF asbestos-bearing products; and (2) records produced by ALCOA identifying "kaylo" products used on its furnaces.

Harris is entitled to relief from the district court's judgment only if she presented "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). After concluding that

she had not exercised due diligence in discovering her "new evidence," the district court denied Harris' motions. We review the court's determination for abuse of discretion, meaning that we affirm the decision unless no reasonable person could agree with it. *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 78 F.3d 285, 294 (7th Cir.1996).[3]

▉ We cannot say that the district court acted unreasonably in denying Harris' motions for leave to file new evidence. Five years after filing suit, more than one year after the GOAL's June 1, 1994 discovery deadline, and more than a month after the district court granted summary judgment, Harris sought leave to file the affidavit of Mickey Walker, a product identification witness known to Harris' counsel for years. Harris' counsel had used Walker as a co-worker witness in three other asbestos cases, but apparently did not learn that Walker once had worked at ALCOA until after the court granted judgment in this case. We agree with the district court that due diligence required Harris' counsel to ask about other job sites in the area where Walker worked once he knew of his background with asbestos products and had decided to use him as a product identification witness. The case cannot be reopened simply because counsel learned a fact late in the game that helps his chances, especially in cases where the parties have agreed to litigate under a set of rules (the GOAL order) that provides limitations and repose for both sides. As the district court noted, "[w]ithout such scrutiny, these matters are subject to constant reopening, continually forcing the Defendant [to] undergo costly defense proceedings."

▉ Finally, Harris claims that she received ALCOA records identifying "kaylo" products after the court granted judgment in favor of OCF. The district court accepted OCF's assertion that Harris had these "newly discovered" documents in her possession as early as November 10, 1994 (nearly four months before OCF moved for summary judgment), and as late as February 27, 1995 (over three months before the court granted judgment in favor of OCF). The court then ruled that the records were not newly discovered; they were overlooked.[4] We need not determine exactly when Harris first received these documents because while one of the records states that "kaylo" was used on ALCOA furnaces, it does not identify the kaylo as OCF's. Accordingly, even with the benefit of these records, Harris has the same problem of product identification (and thus causation) that led the district court to grant summary judgment in the first place.

## III. Conclusion

Harris bore the burden of identifying evidence sufficient to support an inference that her husband inhaled asbestos from OCF's kaylo, as opposed to other manufacturers' asbestos products. Harris failed to meet that burden, and does not get another opportunity based on evidence that may be beneficial, but is not newly discovered. Accordingly, the judgment of the district court is AFFIRMED.

---

3. There are five prerequisites to a successful Rule 60(b)(2) motion: (1) the evidence was discovered following trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result. *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 78 F.3d at 293–94. If any of

these prerequisites is not met, the plaintiff cannot prevail on her motion.

4. Harris did not dispute these dates until her reply brief filed in support of her motion to reconsider, which is not properly in the record on appeal because the district court struck it as untimely.