Danny **SPOONAMORE**, Executor of the Estate of Paul Spoonamore, Sr.,Deceased, and Hazel Spoonamore, in her own right, Plaintiffs,

v.

**ARMSTRONG WORLD INDUSTRIES, INC.,** *et al.,* Defendants.

No. IP 93–798 C M/S.

United States District Court, S.D. Indiana, Indianapolis Division.

May 14, 1998.

Thomas J. Young, Young Riley & Dudley, Indianapolis, IN, Robert E. Paul, Paul Reich Meyers PC, Philadelphia, PA, for Danny Spoonamore.

Michael Bergin, Locke Reynolds Boyd & Weiselll, Indianapolis, IN, for Armstrong World Industries, GAF Corp., Union Carbide Corp.

Gary P. Price, Lewis and Kappes, Indianapolis, IN, for Berkheimer Co. Inc. GW.

Richard Ewing, Stewart & Irwin, Indianapolis, IN, Thomas W. Hayes, Law Office of William M. Koziol, Long Grove, IL, for John Crane Inc.

Michael P. Bishop, Bishop & Bishop, Indianapolis, IN, for Marmon Corp.

Peter E. Carlson, Kelley Drye & Warren, Chicago, IL, Steven D. Hardin, McHale, Cook & Welch PC, Indianapolis, IN, for Owens–Corning Fiberglas.

Robin L. Babbitt, Bingham Summers Welsh & Spilman, Indianapolis, IN, Robert A. Bunda, Bunda Stutz & Dewitt, Toledo, OH, for Owens–Illinois Glass Container.

## ORDER on MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

Defendant John Crane, Inc. ("John Crane"), has filed a Motion for Summary Judgment against Plaintiffs, Danny Spoonamore, Executor of the Estate of Paul Spoonamore, Sr., deceased, and Hazel Spoonamore, in her own right ("Plaintiffs"). John Crane maintains that summary judgment should be granted on Plaintiffs' claims because the Plaintiffs have not offered adequate evidence to support an inference that the deceased inhaled asbestos dust from a John Crane product and because the statute of repose bars any product liability action that is not commenced within ten years of the date the product at issue was delivered to its initial user. According to John Crane, the Plaintiffs filed their causes of action after the period of repose expired. The issues have been fully briefed and are ready to be resolved. For the reasons stated herein,

the Court GRANTS John Crane's Motion for Summary Judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

On June 22, 1993, Paul Spoonamore, Sr., ("Mr.Spoonamore") and Hazel Spoonamore ("Mrs.Spoonamore") filed a complaint against John Crane and several other defendants alleging negligence, strict liability and loss of consortium claims related to Mr. Spoonamore's exposure to asbestos and asbestos materials. *See* Compl. [Def.'s Ex. D]. The Plaintiffs contend that Mr. Spoonamore's exposure to Defendants' products caused his mesothelioma. *Id.* ¶ 10. From 1942 until 1963, Mr. Spoonamore was employed by Union Carbide in Speedway, Indiana, first as a laborer in 1942, then as a laborer/supervisor from 1946 until 1952 and finally as an electrician. Spoonamore Dep. at 7, 10, 14; *see* Compl.; Plfs.' Answer to Interrogs. ¶ 2. He alleges that while working as a laborer and a supervisor at Union Carbide he was exposed to a John Crane packing and sealing compound that contained asbestos. Spoonamore Disc. Dep. at 99. Part of a laborer's job involved filling acetylene welding cylinders and placing a valve, which contained a safety plug, on top of the cylinders. Spoonamore Dep. at 46. A sealant was used on the threads of the valves before the valves were screwed into the tops of the cylinders. *Id.* at 47. As a laborer, Mr. Spoonamore performed this task periodically, and while he was a supervisor, the task was performed in his presence. *Id.* According to Mr. Spoonamore, the sealant used on the threads was a John Crane asbestos-containing sealant, which came in three to five pound cans. *Id.* It was the only John Crane product he recalled using. Spoonamore Disc. Dep. at 101. He did not use the John Crane sealant product while serving as an electrician for Union–Carbide. *Id.* at 99. According to George McKillop ("McKillop"), former Product Manager for the Packing and Compound Division at John Crane, although John Crane manufactured a plastic

lead seal it did not manufacture, sell or distribute an asbestos-containing plastic lead seal. Def.'s Ex. C ¶¶ 1–3. Furthermore, McKillop reports that John Crane never mined and sold commercial asbestos. *Id.* ¶ 4. In an affidavit presented by Paul Spoonamore, Jr. ("Paul Junior"), Paul Junior maintains that when he worked with his father at Union Carbide from 1962 until 1963 he personally observed Mr. Spoonamore being exposed to a John Crane asbestos gasket product and breathing dust from that product on numerous occasions. Plfs.' Ex. A ¶¶ 1–3.

Mr. Spoonamore died January 2, 1994. *See* Motion to Amend Compl. Subsequent to his death, Danny Spoonamore, in his capacity of Executor of the Estate of Paul Spoonamore, Sr., was substituted as plaintiff for Mr. Spoonamore. *See* Order of November 23, 1998; Order of November 19, 1997. Mrs. Spoonamore continues to pursue her loss of consortium claim. *Id.*

## II.  STANDARDS

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir.1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996).

## III.  DISCUSSION

### A.  Exposure to Defendant's Product

■ It is the Plaintiffs' burden to point to evidence that links a John Crane product to Mr. Spoonamore's illness. *Harris v. Owens–Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir.1996). In order to withstand a motion for summary judgment on their claims, the Plaintiffs must, at a minimum "produce evidence tending to show that he [the plaintiff] inhaled asbestos produced by the *defendant's* product."[1] *Id.,* at 1432 (emphasis original); *see also Peerman v. Georgia–Pacific Corp.*, 35 F.3d 284, 287 (7th Cir.1994) (explaining that although the Indiana Supreme Court has not determined whether causation in an asbestos case requires actual exposure to the defendant's product or only proof that the asbestos containing product was used at a job site when the plaintiff was employed there, the plaintiff had failed to produce evidence that the defendant's product caused her husband's mesothelioma). The Seventh Circuit explained that the inference that the plaintiff inhaled asbestos dust "can only be made by showing that the defendant's product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a significant amount of asbestos dust and that the dust might have been inhaled by the plaintiff." *Peerman,* 35 F.3d at 287.

According to Mr. Spoonamore's deposition testimony, the only John Crane product he came in contact with was a John Crane packing and sealing compound that was used on the threads of the valves of the

---

1. *Harris* addressed a negligence claim brought against the defendant. 102 F.3d at 1432. If the Plaintiffs cannot demonstrate that Mr. Spoonamore was even exposed to or inhaled dust from a John Crane asbestos product, they will not be able to maintain either the negligence or the strict liability claim against John Crane.

acetylene tank welding cylinders. Spoonamore Dep. at 46; Spoonamore Disc. Dep. at 99, 101. In response to Mr. Spoonamore's allegation, John Crane has offered the affidavit of McKillop. Given Mr. Spoonamore's description of the sealant and its application, McKillop concludes that Mr. Spoonamore was referring to a plastic lead seal produced by John Crane. Def.'s Ex. C ¶ 3. John Crane asserts that although it, and its predecessor companies, did manufacture, sell and/or distribute a non-asbestos plastic lead seal, neither John Crane, nor its predecessors, ever manufactured, sold and/or produced an asbestos-containing plastic lead seal. Id. ¶ 4. Thus, John Crane argues, Mr. Spoonamore has not and cannot produce evidence that leads to the inference that he inhaled asbestos produced by a John Crane product.

The Plaintiffs have not offered evidence that controverts John Crane's evidence establishing that John Crane did produce an asbestos-containing plastic lead seal. Instead, the Plaintiffs offer Paul Junior's affidavit, asserting that Mr. Spoonamore was exposed to and breathed dust from John Crane asbestos gaskets. Although all inferences are to be drawn in favor of the non-moving party, the Plaintiffs are only entitled to reasonable or justifiable inferences. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir.1994). The Plaintiffs are not able to defeat John Crane's motion by offering an affidavit that contradicts Mr. Spoonamore's testimony. The Seventh Circuit has been critical of parties who attempt to patch up their deposition testimony by offering their own subsequent affidavits. *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67 (7th Cir.1995); *see also Harris*, 102 F.3d at 1432. As the court has noted "'[i]nherently depositions carry an increased level of reliability. Depositions are adversarial in nature and provide the opportunity for direct and cross-examination.'" *Harris*, 102 F.3d at 1432 (citing *Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir.1994)). Here, the Plaintiffs have

not offered an affidavit by Mr. Spoonamore in an attempt to patch up his own deposition testimony. Instead, they have offered the affidavit of Paul Junior in an attempt to create a genuine issue of material fact, and that affidavit contradicts the deposition testimony of Mr. Spoonamore.[2]

First, Paul Junior stated in his affidavit that Mr. Spoonamore was exposed to John Crane "asbestos gaskets." *Id.* ¶ 2. Mr. Spoonamore testified that the only John Crane product he recalls using was the sealant used on the cylinder valves. Spoonamore Disc. Dep. at 101. If Paul Junior's referral to an asbestos gasket is in fact a reference to the sealant used on the cylinder valves, John Crane has offered evidence that the referenced sealant did not contain asbestos. Def.'s Ex. C ¶ 3. The Plaintiffs have not offered any evidence concerning the sealant that suggests it did contain asbestos. If Paul Junior's affidavit refers to a different John Crane product, such a statement directly contradicts Mr. Spoonamore's deposition testimony and the interrogatory answers offered by the Plaintiffs. Spoonamore Disc. Dep. at 99, 101; Plfs.' Answers to Interrogs. ¶ 18. When asked to list the asbestos products that he came into contact with at any time, the only John Crane product Mr. Spoonamore listed was "John Crane packing and sealing compound." Plfs.' Answers to Interrogs. ¶ 18.

Second, Paul Junior states in his affidavit that he personally observed Mr. Spoonamore "being exposed to the asbestos products of the defendants listed above and breathing dust from those products on numerous occasions." Plfs.' Ex. A ¶ 3. However, according to Mr. Spoonamore's deposition testimony, Paul Junior's employment at Union Carbide only overlapped with Mr. Spoonamore's employment between 1962 and 1963, during which time Mr. Spoonamore was an electrician. Spoonamore Disc. Dep. at 60; Plfs.' Ex. A ¶ 1; Plfs.' Ex. A.

2. Paul Junior's affidavit was given almost four years after Mr. Spoonamore died. *See* Plfs.'

Answers to Interrogs. ¶ 2. Mr. Spoonamore stated that he was not in contact with the John Crane sealant while he was an electrician. Spoonamore Dep. at 47; Spoonamore Disc. Dep. at 99. Furthermore, Mr. Spoonamore testified that he and Paul Junior did not work together and that they had different jobs at Union Carbide. Spoonamore Disc. Dep. at 60.

Although co-worker testimony may be used to establish product identification, Paul Junior's own affidavit indicates that he was not present throughout the pertinent time of Mr. Spoonamore's exposure to the alleged asbestos product or dust at issue. *See Harris*, 102 F.3d at 1432–33. Additionally, the Plaintiffs have not offered evidence indicating that McKillop's conclusion about the John Crane sealant product is incorrect. Given that the Plaintiffs have failed to counter McKillop's affidavit, the Plaintiffs have not offered evidence that allows for an inference that John Crane's product caused Mr. Spoonamore's illness. However, the Court need not rest its decision solely on that conclusion, as Plaintiffs have also failed to establish that their suit complied with Indiana Code § 34–3–2–1.

### B. Applicability of the Statute of Repose

Under the Indiana Code, "a product liability action must be commenced: (1) within two (2) years after the cause of action accrues; or (2) within ten (10) years after the delivery of the product to the initial user or consumer." Ind.Code Ann. § 34–20–3–1 (West Supp.1998) (formerly Ind. Code Ann. § 33–1–1.5–5).[3] An exception to this rule applies for claims involving personal injury, disability, disease or death resulting from exposure to asbestos when the action is brought against persons who mined and sold commercial asbestos.[4] Ind.Code Ann. § 34–20–3–2 (West Supp.1998)(formerly Ind.Code Ann. § 33–1–1.5–5.5). If the exception applies, the claim must be filed within two years after the action accrues; the point of accrual is the date on which the injured person knows that the person has an asbestos related disease or injury. Ind.Code Ann. § 34–20–3–2(a)(2), (b). The Plaintiffs maintain that the exception specified in § 34–20–3–2 applies to their claims against John Crane. John Crane contends that the Plaintiffs' claims against it do not fall within the narrow exception of § 34–20–3–2 and therefore, the claims are governed by the statute of repose in § 34–20–3–1. Thus, John Crane argues, it is entitled to judgment because the Plaintiffs filed their claims long after the statute of repose expired.

In a previous decision, this Court had an opportunity to examine the exception to the statute of repose. *See Roberts v. A.C. & S., et. al,* No. IP 94–1248 (S.D.Ind. July 2, 1998). Rejecting the argument that the "and" should be read as "or," this Court determined that in order to take advantage of the exception in § 33–1–1.5–5.5, now § 34–20–3–2, the plaintiff's claim has to be against a defendant who both mined and sold commercial asbestos. *Id.* at 8. Furthermore, the Court defined the term "commercial" to "describe the type of asbestos mined and sold by the defendants, rather than as a reference to a product intended to be bought or sold." *Id.* at 7.

The Court finds that its reasoning in *Roberts* continues to be sound. Subsequent to the *Roberts* decision, two Indiana Court of

---

3. The pertinent sections of the Product Liability Act were previously codified at Indiana Code § 33–1–1.5–5 and § 33–1–1.5–5.5. The Act was repealed, amended in part and recodified in 1998, and the pertinent sections are now respectively located at Indiana Code § 34–20–3–1 and § 34–20–3–2. P.L. 1–1998, Sec. 15. Minor nonsubstantive changes were made to the relevant sections. *See* Ind.Code Ann. §§ 34–20–3–1, 34–20–3–2 (West Supp. 1998).

4. The exception also applies when the action is brought against funds that have, as a result of bankruptcy proceedings or in order to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims. Ind.Code Ann. § 34–20–3–2(d)(2) (formerly § 33–1–1.5–5.5)

Appeals decisions have come to the same conclusion concerning the requirement that the defendant must have both mined and sold commercial asbestos in order for § 34-20-3-2 to apply. *Novicki v. Rapid-American Corp.*, 707 N.E.2d 322, 324 (Ind. Ct.App.1999); *Sears Roebuck & Co. v. Noppert,* 705 N.E.2d 1065, 1068 (Ind.Ct. App.1999) (pet. for transfer pending). In both cases the courts determined that there is no ambiguity in the statute that requires the courts to construe "and" to mean "or." *Noppert,* 705 N.E.2d at 1068; *see Novicki,* 707 N.E.2d at 324 (noting that the express terms of the statute require that the exception found in § 34-20-3-2 be applied only when the defendant mined and sold commercial asbestos). The Court will not accept Plaintiffs' invitation to certify issues concerning the meaning of "mined and sold commercial asbestos" in § 34-20-3-2 to the Indiana Supreme Court. *See United Farm Bureau Mut. Ins. Co. v. Metropolitan Human Relations Comm'n,* 24 F.3d 1008, 1015 n. 10 (7th Cir.1994) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 390-91, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (explaining that the decision to grant or deny a motion to certify a question of state law is at the district court's discretion)).

Plaintiffs have offered no evidence that John Crane mined and sold commercial asbestos. *See* McKillop Aff. ¶ 4. In fact, the Plaintiffs have not produced evidence that even disputes John Crane's assertion that the sealant it produced was not an asbestos-containing sealant. However, even if Paul Junior's statements concerning the John Crane asbestos gaskets were accurate, because there is no evidence that John Crane mined and sold commercial asbestos, § 34-20-3-2 does not apply to the Plaintiffs' claims against John Crane. Instead, § 34-20-3-1 is applicable to the Plaintiffs' claims. Under § 34-20-3-1, the statute of repose bars claims not commenced within ten years after the delivery of the product at issue to the initial user or consumer. At the Plaintiffs' admission, Mr. Spoonamore's last exposure to an alleged John Crane asbestos product occurred no later than 1963. Plfs.' Resp. to John Crane's Statement of Mat. Fact ¶ 6. It follows that any delivery of John Crane products to which Mr. Spoonamore was exposed occurred no later than that same time. The Plaintiffs filed their complaint against John Crane on June 22, 1993, regarding exposure that occurred, at the latest, thirty years prior. Thus, the causes of action against John Crane were filed well after the applicable ten year period of repose expired. Ind.Code Ann. § 34-20-3-1. The Plaintiffs' claims against John Crane are therefore barred under § 34-20-3-1.

### C. Wrongful Death Action Analysis

The Court's finding that the statute of repose bars the Plaintiffs' claims is not affected by the fact that the Plaintiffs are now pursuing a wrongful death action that is based on the negligence and strict liability claims first alleged by Mr. Spoonamore. Under the Indiana Wrongful Death Act, a personal representative of the deceased may maintain an action if the deceased, had he lived, been able to maintain the action. Ind.Code Ann. § 34-23-1-1 (West Supp.1998) (formerly codified at Ind.Code Ann. § 34-1-1-2). Because the evidence does not allow for an inference that Mr. Spoonamore was exposed to or inhaled dust from a John Crane asbestos product, if Mr. Spoonamore was still alive, he would not be able to maintain his causes of action against John Crane. Thus, the administrator of his estate cannot maintain a wrongful death action against John Crane. The claim brought by Mrs. Spoonamore on her own behalf for loss of consortium cannot survive because there can be no finding of liability against John Crane on Mr. Spoonamore's claims.

Additionally, the Court notes, in an abundance of caution, that even if the Plaintiffs could establish that Mr. Spoonamore was exposed to or inhaled dust from a John Crane asbestos product, the Plaintiffs cannot maintain a wrongful death action based on negligence and strict liability claims because the statute of repose bars those

causes of action. A recent Indiana appellate court decision discussing the accrual of a wrongful death action has come to the Court's attention, and the Plaintiffs have offered this case as support for their argument. Although the Court believes that a closer examination of the new case and related cases is appropriate, the recent decision does not affect the Court's conclusion that the negligence and strict liability claims are barred by the statute of repose, and therefore, a wrongful death action based on those claims is also barred.

In *Holmes v. ACandS, Inc.*, 709 N.E.2d 36 (Ind.App.1999), the plaintiff, Ivay Holmes ("Holmes"), both in her individual capacity and as representative of the estate of her husband, Henry Holmes ("Henry"), brought a wrongful death suit against various asbestos manufacturers ("defendants"). *Id.* at 38. On or about June 20, 1994, Henry was diagnosed with lung cancer caused by asbestos exposure, and he died from that cancer on July 22, 1994. *Id.* The court did not make clear when the alleged exposure to the asbestos had occurred. On July 22, 1996, Holmes filed a wrongful death claim based upon negligence, product liability, and premises liability. After the trial court granted summary judgment in favor of certain defendants and dismissed with prejudice the remaining defendants, Holmes appealed. *Id.* She argued that Henry's death was a separate injury from his cancer and that the wrongful death action was not barred by the two year statute of limitations that pertains to personal injury claims. *Id.* She maintained that the date of the diagnosis of Henry's cancer should have no bearing upon the bringing of a wrongful death action. *Id.* The defendants argued that Holmes's wrongful death action was barred because a personal injury action based on the same acts would have been barred at the time the suit was filed by Holmes. *Id.* Apparently both the court and the Defendants acknowledged that Henry could have brought a personal injury suit at the time of his death but could not have brought that same suit at the time the wrongful death action was filed by Holmes. *Id.* at 40.

As it analyzed the issues before it, the *Holmes* court made clear that it was not expressing an opinion regarding whether Holmes's action would be barred if more than two years had transpired between Henry's discovery of the injury and his death. *Id.* at 40. Furthermore, the court stated "[w]hile we do not necessarily agree with Holmes that the date of Henry's diagnosis has absolutely no bearing upon the wrongful death claim, we need not decide this question." *Id.* at 40. Although the court did not address these issues, it did cite to *N.O. Nelson Mfg. Corp. v. Dickson*, 114 Ind.App. 668, 53 N.E.2d 640 (1944). In *Dickson*, the Indiana Supreme Court declined to overrule its holding in *Wilson v. Jackson Hill Coal & Coke Co.*, 48 Ind. App. 150, 95 N.E. 589 (1911), where it determined that a wrongful death action can be maintained when the decedent's cause of action for the injury that caused the death was barred by the statute of limitations prior to the decedent's death. *Dickson*, 53 N.E.2d at 641; *see Pickens Estate v. Pickens*, 255 Ind. 119, 263 N.E.2d 151, 155 (1970)(explaining that the Wrongful Death Statute phrase "if the former might have maintained an action, had he or she, as the case may be lived" does not literally mean what it says, as the Indiana Supreme Court has held that an administrator of the estate has two years from the time of death to file a wrongful death action even if the decedent's cause of action for the injury that caused the death was bared by the statute of limitations); *see also Louisville, E & St L R Co. v. Clarke*, 152 U.S. 230, 238, 14 S.Ct. 579, 38 L.Ed. 422 (1894) (holding that under Indiana law, a personal representative had a cause of action any time within two years of the decedent's death even if the death occurred more than a year and a day after the injury).[5]

---

**5.** Although these cases has not been overruled, the cases were decided before the Product Liability Act was implemented in 1978. *See* Ind.Code Ann. § 34–20–3–1.

Those cases being noted, the *Holmes* court went on to determine that the Wrongful Death Statute,[6] Indiana Code § 34–23–1–1 (West Supp.1998), does not require the wrongful death action to be filed within a time when the decedent could have brought a cause of action had he or she lived; instead, the court explained that the time of the decedent's death, not the time the action is ultimately brought, is determinative of what actions the decedent " 'might have maintained.' " *Holmes,* 709 N.E.2d 36, 40. Upon examination of the Wrongful Death Statute and Indiana Code § 34–20–3–2, the section regarding asbestos-related actions, the court decided that a product liability cause of action for wrongful death resulting from exposure to asbestos accrues upon the date of death. *Id.* at 41; *see also* Ind.Code Ann. § 34–20–3–2 (West Supp.1998). In coming to this conclusion, the court noted that § 34–20–3–2(b), which reads "[a] product liability action for personal injury, disability, disease or death resulting from exposure to asbestos accrues on the date when the injured person knows that the person has an asbestos related disease or injury," only provides for accrual of an action for an asbestos related disease or injury and does not specifically address the accrual of an action for death. *Holmes,* 709 N.E.2d 36, 41 The court explained, "[w]e presume that the legislature was aware of the Wrongful Death Statute when it enacted Ind.Code § 34–20–3–2, and chose not to provide for a different accrual date for wrongful death actions based on product liability." *Id.* The court concluded that a product liability claim for wrongful death resulting from asbestos related disease or injury accrues on the date of the death of the decedent. *Id.* at 42.

In its decision, the *Holmes* court expressed no opinion regarding whether the wrongful death action would have been barred if more than two years had passed between the discovery of the injury and Henry's death. Furthermore, the court did not need to decide what bearing the date of diagnosis had upon the wrongful death action. There was also no discussion of the time elapse between the last exposure to the asbestos and the filing of the suit. Presumably, it was not an issue in the *Holmes* case. In the case presently before this Court, however, there was more than just one month between Mr. Spoonamore's diagnosis and death, and there was a significant period of time between Mr. Spoonamore's last exposure to a John Crane product and the filing of his lawsuit. Mr. Spoonamore and his wife filed causes of action against John Crane on June 22, 1993. In their complaint they alleged that Mr. Spoonamore discovered he was suffering from an asbestos related disease within two years of filing the complaint in this case. Compl. ¶ 10. Even if the Plaintiffs could establish that the John Crane product Mr. Spoonamore was exposed to contained asbestos, the last possible exposure Mr. Spoonamore had to any alleged John Crane asbestos product occurred in 1963. Plfs.' Resp. to John Crane's Statement of Mat. Fact ¶ 6. Mr. Spoonamore died on January 2, 1994. On November 19, 1999, Judge Weiner granted a motion that allowed the substitution of Daniel Spoonamore as a plaintiff in the capacity of the executor of Mr. Spoonamore's estate, converted the action to a wrongful death action and provided that the amendment relate back to the date of the death of the decedent. *See* Order of November 19, 1997.

■ The *Holmes* case is distinguishable from the case currently before this Court. First, unlike in *Holmes* where, according to the court, it was clear that Henry could have maintained a personal injury action against the defendants at the time of his death, it is clear that Mr. Spoonamore

---

6. The Wrongful Death Statute reads:
[w]hen the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for the same act or omission.
Ind.Code Ann. § 34–23–1–1.

could not have maintained his causes of action against John Crane at the time of his death. Under the statute of repose found in Indiana Code § 34–20–3–1, Mr. Spoonamore who filed product liability claims against John Crane while he was still alive, could not have properly maintained those claims at the time he filed the action, much less at the time of his death. This brings the Court to the second point upon which *Holmes* is distinguishable from the Plaintiffs' case—the affect of the § 34–20–3–1 statute of repose on a wrongful death action. The *Holmes* court only took into account § 34–20–3–2 when it discussed the accrual of the wrongful death action under circumstances where it was clear that the statute of limitations would have allowed the deceased to bring the products liability claims against the defendants at the time of his death. Section 34–20–3–2 does not contain a statute of repose and therefore its focus is on the accrual of the statute of limitations in an asbestos related claim. Ind.Code Ann. § 34–20–3–2. However, as an appellate court in *Novicki* determined, § 34–20–3–2 is not applicable in all asbestos related actions.

In *Novicki*, the plaintiffs, as representatives of Julius Novicki's ("Novicki") estate brought a wrongful death action against a number of defendants. Novicki was diagnosed with mesothelioma on October 19, 1993. *Id.* at 322. He died on March 4, 1995, and the plaintiffs filed suit on March 4, 1997. *Id.* The defendants argued that § 34–20–3–2[7] should apply and that consequently the plaintiffs' claims should be dismissed. 707 N.E.2d at 322. Highlighting the language in § 34–20–3–2 that reads "personal injury, disability or death resulting from exposure to asbestos must be commenced within two (2) years after the cause of action accrues," the defendants argued that the plaintiffs' claim should be dismissed because the claims were filed more than two years after Novicki was first diagnosed with mesothelioma. *Id.* at 323. After the trial court granted the motion to dismiss, the appellate court reversed and remanded. It determined that § 34–20–3–2 did not govern the case because there was no evidence that the defendants mined and sold commercial asbestos, as is required by the statute in order for § 34–20–3–2 to apply. *Id.* at 323–24. Instead, the court instructed that on remand the case should be analyzed under § 34–20–3–1. *Id.* at 324. Section 34–20–3–1 contains both the statute of limitations and the statute of repose for product liability actions.

Here, John Crane is arguing that the statute of repose, not the statute of limitations is a bar to the product liability causes of action that served as a basis for Mr. Spoonamore's complaint and now serve as a basis for the wrongful death claims brought by the Plaintiffs. According to the example set by the *Novicki* court, it is proper for this Court, when determining whether a wrongful death cause of action may be maintained, to first determine whether § 34–20–3–2 applies in this case. As the Court has determined, § 34–20–3–2 does not apply to causes of action brought against John Crane because the Plaintiffs have offered no evidence that John Crane mined and sold commercial asbestos. Thus, § 34–20–3–1, and more specifically, the statute of repose provision of § 34–20–3–1 is to be applied in this case. The Court acknowledges that the courts have determined that a wrongful death action may be timely even when the deceased could not have brought a products liability claim against the defendants at the time of death because the statute of limitations had expired. However, a review of cases addressing whether wrongful death actions can be maintained when the statute of

---

7. In the *Novicki* case the court refers to § 34–20–3–2 as "Section 5.5," as it was formerly codified at § 33–1–1.5–5.5. Section 34–20–3–1 was formerly codified at § 33–1–1.5–5 and is referred to as "Section 5" in *Novicki* and the other cases the Court cites in this order. As previously noted, when the statutes were amended and recodified in 1998, there were only nonsubstantive alterations to the statutes. *Novicki,* 707 N.E.2d 323 n. 4. The Court will refer to the statutes in terms of their current versions.

repose expired prior to the decedent's death indicates that if the statute of repose has expired for the product liability claims that underlie the wrongful death action, then the wrongful death action itself is barred.

In a decision made after the enactment of the Products Liability Act, now found at § 34–20–3–1, the Indiana Supreme Court held that § 34–20–3–1, formerly § 33–1–1.5–5, barred a plaintiff's action because "the damages incurred by the plaintiff occurred more than ten years after the product was first placed in commerce." *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 211 (1981). The plaintiff in *Dague*, the special administratrix of the estate of Robert Dague ("Dague"), deceased, brought a four count complaint seeking damages for the wrongful death of Dague. *Id.* 418 N.E.2d at 209. Dague was piloting a Piper Pawnee aircraft when it crashed on July 7, 1978, and Dague died as a result of crash injuries on September 5, 1978. *Id.* The plaintiff filed the suit against Piper on October 1, 1979. *Id.* The plane Dague was flying at the time of crash had been manufactured and placed in the stream of commerce in 1965. *Id.* Holding that § 34–20–3–1 expressed the clear intention of the legislature to limit the time within which a products liability action could be brought, the court gave an ordinary meaning to the "or" term connecting the provisions allowing a plaintiff to bring a product liability action within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer. *Id.* at 210–11. The court explained that

[t]he obvious intent of the statute, however, is that the action must be brought within two years after it accrues, but in any event within ten years after the product is first delivered to the initial user or consumer, unless the action accrues more than eight but less than ten years after the product's introduction into the stream of commerce.

*Id.* at 210. Determining that the plaintiff's damages occurred more than ten years after the plane was placed in the stream of commerce, the Court ruled that the plaintiff's wrongful death actions were barred. *Id.* at 211.

The Seventh Circuit in its *Schamel v. Textron–Lycoming* decision upheld a lower court's ruling that the plaintiff's wrongful death action was bared by Indiana's statute of repose. 1 F.3d 655, 656 (7th Cir. 1993). In that case, Jerry Schamel ("Schamel") died in a plane crash on January 5, 1988. *Id.* His wife in her capacity as administratrix of Schamel's estate filed a wrongful death action on December 11, 1989. *Id.* According to the plaintiff, the defective parts responsible for her· husband's death were manufactured by the defendant. *Id.* The evidence submitted to the trial court indicated that the latest the part in question could have been sold by the defendant was in 1973, fifteen years before the crash and sixteen years before the wrongful death action was commenced. *Id.* Defendant moved for summary judgment on the argument that the plaintiff's cause of action was barred by the statute of repose now found at § 34–20–3–1. *Id.* The trial court granted that motion and the Seventh Circuit upheld the lower court's decision. *Id.* In her appeal, the plaintiff argued that one claim was not a products liability claim, and therefore not subject to the statute of repose, and that the alleged defective part could have stayed on the distributor's shelves until 1979, bringing the action within the statute of repose. *Id.* The court rejected both of these arguments. *Id.* at 657.

As the Court has already discussed, an Indiana appellate court has also addressed a situation where an asbestos related wrongful death claim was based upon products liability causes of action. *Novicki*, 707 N.E.2d at 322–23. In *Novicki*, the court first determined whether § 34–20–3–2 or § 34–20–3–1 was applicable. After determining that § 34–20–3–1 was applicable, the court remanded the case to the trial court and presented the court with a number of questions to consider as

it reexamines the case. *Id.* at 325. One of those questions reads "[a]ssuming that Novicki's claim is not barred by the statute of repose, is it barred by Section 5's [§ 34–20–3–1] statute of limitation? More specifically, when does a wrongful death action accrue under Section 5 [§ 34–20–3–1]." *Id.* at 325. When reading that question the Court takes note that it is phrased in terms of needing to be answered only if the statute of repose does not bar the plaintiff's claim, that being the wrongful death claim brought on behalf of the estate. Such language indicates to this Court that the statute of repose could bar the plaintiff's wrongful death action if the underlying product liability claims were filed after the statute of repose expired.

Again, the Court notes that the *Holmes* case presented different facts than those at issue here. In its findings, the *Holmes* court did not have to address the questions this Court faces. In *Holmes,* according to the court, it was clear that the deceased could have maintained an action against the defendants at the time of his death. Such is not the case for Mr. Spoonamore. The *Holmes* court analyzed its accrual issue under § 34–20–3–2. As the *Novicki* court demonstrated, before that provision is applied, a court must determine whether the involved defendants mined and sold commercial asbestos, thereby making that provision applicable to the claims. 707 N.E.2d at 324. This Court has determined that § 34–20–3–2 is not applicable to the causes of action originally brought by Mr. Spoonamore because John Crane did not mine or sell commercial asbestos. Thus, the statute of repose found in § 34–20–3–1 comes into consideration.

■ Although the wrongful death action is an independent and not derivative action, the wrongful death action is proven by the plaintiff maintaining causes of action that the deceased could have maintained against the defendant. *See* Ind.Code Ann.

§ 34–23–1–1; *Holmes,* 709 N.E.2d 36, 38. Here, the Plaintiffs have alleged their wrongful death action on negligence, strict liability, and loss of consortium claims.[8] When plaintiffs have based their wrongful death actions on negligence and strict liability claims, the courts have determined that the statute of repose can bar the claims. *See Schamel,* 1 F.3d at 656; *Dague,* 418 N.E.2d at 210. Without determining from what point in time the statute of repose should be measured, the Court notes in this case Mr. Spoonamore actually filed the original suit in June of 1993 and was diagnosed sometime in the two years prior to the filing. The wrongful death cause of action has been related back to January 2, 1994, the date of Mr. Spoonamore's death. Order of November 19, 1997. All these points in time—the time of the diagnosis, the time of filing and the time of death were well after the ten year statute of repose expired, as Mr. Spoonamore's last exposure to John Crane asbestos products, much less the delivery date of those products to the initial user or consumer, was in 1963 at the latest. If he was still alive, under the statute of repose, Mr. Spoonamore could not maintain the causes of action he filed against John Crane. The Plaintiffs' wrongful death actions based on those same causes of action that Mr. Spoonamore brought before he died are also barred by the § 34–20–3–1 statute of repose.

## IV. CONCLUSION

The Plaintiffs have failed to establish a genuine issue of material fact that defeats John Crane's summary judgment motion. The Plaintiffs have not offered evidence that allows for the inference that Mr. Spoonamore inhaled asbestos dust from a John Crane product, nor have the Plaintiffs offered evidence that John Crane mined and sold commercial asbestos. Thus, the statute of repose bars the Plain-

8. Mr. Spoonamore could not have maintained the loss of consortium claim as the right to recover on such a claim belongs to Mrs. Spoonamore. However, if Mr. Spoonamore could not maintain his negligence and strict liability claims, Mrs. Spoonamore could not maintain her loss of consortium claim.

tiffs' claims. Because Mr. Spoonamore could not maintain his causes of action against John Crane if he was still alive, the Plaintiffs cannot maintain the wrongful death action and Mrs. Spoonamore cannot maintain her loss of consortium claim. Accordingly, the Court

now GRANTS John Crane's Motion for Summary Judgment. No triable issues remain for a jury and

John Crane is granted judgment as a matter of law.